[Civ. No. 6923. First Appellate District, Division One.—March 25, 1930.]

ALINDO PONCINO, Administratix, etc., Respondent, v. SIERRA NEVADA LIFE & CASUALTY COMPANY (a Corporation), Appellant.

J. Hampton Hoge for Appellant.

Edwin H. Williams for Respondent.

THE COURT.—This is an action upon a policy of insurance insuring the life of Eugeno Poncino against death resulting from accident occasioned by "the wrecking of any private passenger motor-driven car (motorcycle not included) in which the insured is riding or driving, or by being accidentally thrown from such wrecked motor-driven car." The policy was payable to the estate of the insured. While it was in force his death was caused by injuries due to his having been thrown to the pavement in a collision between an automobile which he was driving and another car and in which his car was wrecked.

The complaint alleged that the automobile driven by the insured was "a private passenger motor-driven car." The allegation was denied by the defendant, and this was the only issue litigated at the trial. A jury returned a verdict for the plaintiff and from the judgment entered thereon the defendant has appealed.

As grounds for reversal it is urged that the implied finding that the automobile in question was "a private passenger motor-driven car" is unsupported, and that the trial court erred in denying defendant's motion for a nonsuit and in certain of its instructions to the jury.

It was testified that the deceased was employed as superintendent by a contractor engaged in erecting concrete buildings and other structures. It was his duty each day to go from place to place where work was being carried on and direct the men employed. In so doing he used the automobile in question, which he kept at his residence, but which was owned by his employer. The car was a Ford runabout upon the rear of which the owner had attached a short box or body similar to those used on ordinary delivery wagons. The insured occasionally transported to and from their places of employment one or more of the workmen, who rode either with the driver or in the rear. These workmen frequently carried with them the tools used in their employment. The insured also from time to time carried thereon empty cement sacks with tools owned by his employer, consisting of shovels and hoes, and at the time of the accident there were in the car three or four bags, described by the witnesses as carpet bags, containing carpenters' tools. The

car was registered by the owner with the motor vehicle department as a commercial vehicle.

In support of its contention that the car was not a passenger vehicle defendant relies upon the following cases: *Travelers' Ins. Co.* v. *Austin,* 116 Ga. 264 [94 Am. St. Rep. 125, 59 L. R. A. 107, 42 S. E. 522] ; *Bogart* v. *Standard Life & Acc. Ins. Co.,* 187 Fed. 851; *Wood* v. *General Accident Ins. Co.,* 156 Fed. 982; *Standard Acc. Ins. Co.* v. *Hite,* 37 Okl. 305 [46 L. R. A. (N. S.) 986, 132 Pac. 333]. In the first case the policy provided for double indemnity in the event injuries were received by the insured "while riding as a passenger and being in or upon a railway passenger car." The insured, who was a paymaster of a railway company, was injured in the course of his duty while riding in his pay-car. It was held that he was not in contemplation of the contract a passenger, and that his car, although capable of being used as a vehicle for the transportation of passengers and had formerly been so used, was not a passenger-car within the meaning of the policy. In the Bogart and Wood cases the policies insured against "injuries from accident while riding as a passenger and being in or on any railway passenger car." It was held that a mail car was not a railway passenger-car within the meaning of the policies and that there could be no recovery. The case last cited involved a policy which exempted the insurer from liability if the insured was injured "while on a locomotive, freight car or caboose used for passenger service." The insured was in charge of a shipment of cattle, and was riding at the time of his death in a caboose from which all persons except drovers and the employees of the railway company were excluded. A recovery was denied on the ground that the caboose was not being used for passenger service within the common and ordinary acceptation of that term or within the meaning of the policy.

As held in the above cases, the manner in which a vehicle is used, as well as its construction, is an important factor in determining its character, and such was the view of the court in *Wilmarth* v. *Pacific Mut. Life Ins. Co.,* 168 Cal. 536 [Ann. Cas. 1915B, 1120, 143 Pac. 780], which case involved the question whether an elevator used both for freight and passengers was a "passenger elevator" within the meaning of an accident policy. It was held that the

provision in the policy for double indemnity in case of injury to the insured "while in a passenger elevator" had reference not only to elevators used exclusively for passengers, but to elevators customarily used for conveying passengers, though also used for carrying freight.

■ As stated, there was testimony that the car was sold to the employer of the insured as a passenger-car, and that it was primarily used to transport the latter from place to place in the course of his employment. That a body was attached and that the insured at the same time used the car for other purposes incidental to the main purpose would not necessarily alter its character. Under the doctrine of *Wilmarth* v. *Pacific Mut. Life Ins. Co., supra*, it would still be a passenger-car; and, as in that case, it was in view of the evidence proper to submit its character to the jury with proper instructions.

The court charged the jury that a passenger automobile need not be in any particular form or made in any particular way, or with any particular contrivance or device, and that it did not need to be used exclusively for the carriage of passengers. Further, that "if it is customarily used for the carriage of passengers or for the carriage of the driver that is sufficient to constitute it a passenger automobile within the meaning of the insurance policy." Defendant insists that in the quoted portion of the instruction the jury was told in effect that though they believed the automobile to be a truck they might nevertheless find for the plaintiff.

■ In determining whether instructions state correctly the law of a particular case they must be considered in connection with the evidence in the case (*Hellman Commercial etc. Bank* v. *Southern Pac. Co.*, 190 Cal. 626 [214 Pac. 46]). ■ Here the testimony shows sufficiently that the car was customarily used for the carriage of the driver, namely, the insured, the carriage of other passengers or their tools being but incidental. This manifestly was the evidential fact to which the instruction referred; and it cannot reasonably be assumed that the jury was misled thereby.

■ Jurors are presumed to be persons of common intelligence and capable of comprehending the ordinary use of language as applied to the particular proposition under consideration and in reference to which it is employed, and the appellate court will not assume that they may not have

understood the charge as the same was understood by the court (*Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237]).  ▮  The instruction, in view of the evidence, was not erroneous; and if defendant deemed it necessary that the jury be instructed with greater particularity it was its duty to request further instructions (*Jacobson* v. *Lamb*, 91 Cal. App. 405 [267 Pac. 114]; *Putnam* v. *Pickwick Stages*, 98 Cal. App. 268 [276 Pac. 1055]).

▮  The jury was instructed that "in cases of uncertainty the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist"; and also "that the language in an insurance policy is framed and formulated by the insurance company; and if that language is in any respect doubtful in meaning or ambiguous or susceptible of two constructions, then it is the duty of the jury to place the construction upon the language which is most favorable to the plaintiff, and resolve any doubt, uncertainty or ambiguity against the insurance company." Defendant contends that no provision in the policy required construction, and in any case that the question was one for the court and not for the jury. In *Postler* v. *Travelers' Ins. Co.*, 173 Cal. 1 [158 Pac. 1022], it was held that an instruction stating the rule of construction of such contracts should not be given to the jury, the question being one for the court. In the present case, however, the jury was elsewhere fully instructed as to the meaning of the material terms of the policy, and it is clear that these instructions were followed.  ▮  Moreover, it has been held that error in leaving to the jury the interpretation of the provisions of a contract is not prejudicial where the jury followed the law applicable to the case in their consideration of the instrument (*Stewart* v. *Erskine-Bolst*, 66 Cal. App. 461 [226 Pac. 644]).

The evidence was reasonably sufficient to sustain the verdict of the jury, and no error has been shown which in our opinion justifies the conclusion that the same resulted in a miscarriage of justice.

The judgment is affirmed.