GROVER, Respondent, vs. SHERMAN and another, imp., Appellants.

*January 8—February 6, 1934.*

For the appellants there was a brief by *Coe Brothers* of Barron, and oral argument by *Clarence C. Coe* and *Arthur E. Coe.*

*G. P. Gannon* of Rice Lake, attorney, and *W. T. Doar* of New Richmond of counsel, for the respondent.

FAIRCHILD, J. Appellants insist that the finding of negligence on Sherman's part is not sustained by the evidence. The evidence does show that appellant was on the north side (his right side) of the road close to the ditch when the other car driven by defendant Rooke, who had come into highway 48 from left of the center of 24, swung in front of appellant's car.

The defendant Rooke did not appear in the case, filed no answer, and permitted judgment to go against him by default. His negligence was conceded by him in conversation after the collision and it was clearly proven. The only witnesses

to the collision who testified at the trial were respondent and appellant Sherman. The testimony given by them is not in conflict as to material points and may be briefly summarized as follows: Appellant's car was being driven at about thirty-five miles per hour, Rooke's car about fifteen miles per hour. Highway 48 was forty-eight feet wide, its traveled track was twenty-six feet from shoulder to shoulder. "Right at the mouth of 24 it was probably about forty-two feet." Appellant saw Rooke's car before it entered highway 48. He continued to observe it, slowed his car up and drove close to the ditch on his right. Rooke made a rather wide turn but with space and time enough to reach the south side (his right side) of the road without interfering with appellant's movements. Rooke, however, did not do the expected thing. That he was not going to get over on his own side of the road did not become manifest to Sherman in time for him to escape the collision. Sherman testified that he had already slowed up, and also says:

"My car was going west and he was supposed to turn east. He had a couple of hundred feet of road to make his turn. I still thought he had plenty of room. He just took a swing right in front of my car. . . . It is possible I could have turned to the left of the center of 48 and avoided him if I had known that this accident was going to happen, but it happened so quick that I didn't have time."

Respondent says:

"Before we hit the Rooke car it was turning to the right. The last that I saw of the Rooke car before I dodged behind the dashboard, it had made about a quarter of a turn to the right . . . about fifty feet from the point of collision and at that time he was traveling northeast."

Rooke's ceasing to turn to his right and the sudden turn and movement toward the northeast placed his car somewhat crosswise of the path of appellant, making it difficult if not

impossible to pass Rooke on the north side, and in appellant's attempt to go to the south the collision occurred, appellant striking Rooke's car back of the center of the right side. That a meeting of the cars would occur became evident when Rooke turned toward the northeast in front of appellant's car. At that time and so far as appellant was concerned the result was inevitable. The case then is one where there was no negligence on the part of appellant and no violation by him of any duty owing to his guest.

Appellant is protected against the charge of negligence by the rule which gives him the right, acting reasonably, to assume that other travelers on the highway will use ordinary care to respect his right to proceed in his proper lane of travel, to act under and in accordance with that assumption until it is reasonably foreseeable that his path is to be obstructed. Until within an instant before the cars collided, defendant Rooke was in a position on the highway to go to his right and avoid a collision. Sherman was entitled to act on the presumption that Rooke would timely take his proper place in the highway. The act on the part of Rooke that informed Sherman of an intention to occupy Sherman's lane of travel occurred suddenly and when the cars were so situated by reason of Rooke's turn to the northeast that the contact could not be avoided. "A situation quite similar to the one presented in this case is found in *John v. Pierce,* 172 Wis. 44, 178 N. W. 297, and it was there held that a driver has a right to assume that every person whom he meets will exercise ordinary care to avoid injury and has a right to expect that a person upon the wrong side of the road will turn to the right until the circumstances are such that an ordinarily prudent person would know otherwise." *Kull v. Advance-Rumely Thresher Co.* 209 Wis. 565; 569, 245 N. W. 589. Rooke's negligent conduct rendered Sherman's caution unavailing by creating a situation under

which ordinary care by one only does not prevent accidents. Sherman exercised ordinary care in approaching the place of collision, in managing his car, and in keeping a lookout, and therefore is not responsible for results occasioned solely by the careless conduct of another.

Nor did Sherman fail as a host in performing any duty he owed to respondent as a guest. A gratuitous guest has no right, arising from that relation to his host, permitting him to require any particular degree of skill in the driver. The guest takes the driver with whatever skill he may possess and submits to, accepts, and can expect only the care and protection which the driver is able to extend. Exercise of the skill possessed by the driver in meeting the exigencies of travel by automobile is all that the guest can demand. As said in *Cleary v. Eckart,* 191 Wis. 114, 210 N. W. 267:

"Does the guest have a right to demand of the host a degree of skill for the security of the guest which the host is utterly unable to exercise for his own protection? It would seem that the statement of this question carried with it its own answer, and that the same consideration which compels the guest to accept the car in the condition in which he finds it also compels him to be content with the honest and conscientious exercise of such skill as the host or driver may have attained in the management and control of the automobile in emergencies."

The *Cleary v. Eckart Case; Ganzer v. Great American Indemnity Co.* 209 Wis. 135, 244 N. W. 588; *Harter v. Dickman,* 209 Wis. 283, 245 N. W. 157; *Hensel v. Hensel Yellow Cab Co.* 209 Wis. 489, 245 N. W. 159; *Eisenhut v. Eisenhut,* 212 Wis. 467, 248 N. W. 440, 250 N. W. 441, and other cases referred to in the opinions in those cases, recognize this doctrine. The facts are that the appellant was alert; he was watching the corner, he kept well to his own side of the road, he slowed down. It is evident that he observed the movements of Rooke, that he took the whole

situation into consideration in forming a judgment on the manner in which it would be safe for him to proceed. The situation which he could reasonably expect would develop would include the movement of Rooke over to the south side of the road, making travel safe for appellant, respondent, and Rooke. There is nothing on which to base a finding that Sherman failed to exercise ordinary care in respect to lookout or that his speed was excessive, or that he used less skill than he possessed in viewing the highway, the presence of the Rooke car, and in forming an opinion of what was going to happen. His failure, if any, could only be in calculating the course of travel of the Rooke car. This is a matter so directly connected with appellant's ability as a driver as to be a part of and included in the elements assumed by respondent when he became the guest in that car. *Harter v. Dickman, supra; Hensel v. Hensel Yellow Cab Co., supra.* Both the appellant and respondent saw at the same time the disastrous movement of Rooke in turning his car to the northeast into appellant's path and at that instant they saw that the collision was inevitable. It must be held on the facts of this case that appellant was exercising ordinary care and that the respondent's injury was caused without negligence on the appellant's part.

*By the Court.*—Judgment reversed. Cause remanded with direction to dismiss the complaint as against appellants.