SCHILLING, Appellant; v. STOCKEL and others, Respondents.*

*January 5—March 2, 1965.*

---

* Motion of rehearing denied, with costs, on April 27, 1965.

526

For the appellant there was a brief by *Becker & Hughes* of Dubuque, Iowa, and *Walter Cole* of Platteville, attorneys, and *Frank M. Coyne* of Madison of counsel, and oral argument by *Mr. Coyne*.

For the respondents Bernard Stockel and American Family Mutual Insurance Company there was a brief and oral argument by *Frank D. Hamilton* of Dodgeville.

For the respondent State Farm Mutual Automobile Insurance Company there was a brief by *Kopp, McKichan & Geyer* of Platteville, attorneys, and *Henry A. Field, Jr.*, of Madison of counsel, and oral argument by *Mr. Field* and *Mr. Harold K. Geyer*.

GORDON, J.

### The Negligence Problem.

The jury found Mr. Schilling 50 percent negligent for driving with his left elbow protruding from the window next to the driver's seat of his automobile. Upon appeal, it is contended that there could be no negligence on the part of Mr. Schilling because of the extraordinary way that the injury occurred.

If the plaintiff's left arm had been struck by a passing vehicle, the jury would have decided the negligence question, and there probably would have been little difficulty in ordering judgment based on such determination. A few cases in other jurisdictions have taken the view that one whose arm is injured while extended from a motor vehicle is contributorily

negligent as a matter of law, but the majority of cases have recognized this to be a question for the jury. Anno. 40 A. L. R. (2d) 233, 235. There do not appear to be any previous Wisconsin decisions on this point.

The problem which we must determine in this case is whether Mr. Schilling may be held liable; he contends he was not negligent, but we believe that the jury was entitled to find that he was negligent. Nonetheless, we conclude that he may not be held accountable for his negligence for reasons of public policy.

On a number of occasions, this court has considered the problem presented when there is a negligent act accompanied by an extraordinary injury. There was a period in our judicial history when we accepted the view of the New York court of appeals in *Palsgraf v. Long Island R. R. Co.* (1928), 248 N. Y. 339, 162 N. E. 99. Under such view, if there was an injury resulting from careless action which was not reasonably apparent to the one so acting, there was deemed to be no breach of duty to the injured party; he was simply outside of the zone of risk. *Waube v. Warrington* (1935), 216 Wis. 603, 258 N. W. 497.

Commencing in 1952, with *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29, we ruled on a number of cases in which we rejected "the *no-duty* formula of *Palsgraf* and *Waube*," to use the phraseology of *Longberg v. H. L. Green Co.* (1962), 15 Wis. (2d) 505, 516, 113 N. W. (2d) 129, 114 N. W. (2d) 435. See *Colla v. Mandella* (1957), 1 Wis. (2d) 594, 598, 85 N. W. (2d) 345, and *Klassa v. Milwaukee Gas Light Co.* (1956), 273 Wis. 176, 77 N. W. (2d) 397. Duty is still an important factor in determining whether an act is negligent. *E.g., Szep v. Robinson* (1963), 20 Wis. (2d) 284, 121 N. W. (2d) 753. However, once an act has been found to be negligent, we no longer look to see if there was a duty to the one who was in fact injured.

In the *Klassa Case,* at page 182, we quoted approvingly the analysis of the Minnesota court in *Christianson v. Chicago, St. P., M. & O. R. Co.* (1896), 67 Minn. 94, 97, 69 N. W. 640:

"Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

When the court determines that liability should not attach even though a negligent act has been committed, our decisions since 1952 direct that nonliability be based on considerations of public policy rather than couched in terms of an absence of duty. In *Colla v. Mandella,* we said, at page 598:

"It is recognized by this and other courts that even where the chain of causation is complete and direct, recovery against the negligent tort-feasor may sometimes be denied on grounds of public policy because the injury is too remote from the negligence or too 'wholly out of proportion to the culpability of the negligent tort-feasor,' or in retrospect it appears too highly extraordinary that the negligence should have brought about the harm, or because allowance of recovery would place too unreasonable a burden upon users of the highway, or be too likely to open the way to fraudulent claims, or would 'enter a field that has no sensible or just stopping point.' [Citations omitted.] In the *Pfeifer Case, supra,* we stated the essential rationale of the cases of that sort in capsule form as follows (p. 238):

" '. . . in cases so extreme that it would shock the conscience of society to impose liability, the courts may step in and hold as a matter of law that there is no liability.' "

The current position of the Wisconsin court regarding duty versus public policy was discussed by Professor Richard V. Campbell in Wisconsin Law Governing Automobile Accidents—Part I, 1962 Wisconsin Law Review, 240.

The concept of relieving a negligent actor from liability on grounds of public policy was also recognized by this court in several cases involving the question of intervening cause. *Heritage Mut. Ins. Co. v. Sheboygan County* (1962), 18 Wis. (2d) 166, 171, 118 N. W. (2d) 118; *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. (2d) 421, 429, 114 N. W. (2d) 823; *Ryan v. Cameron* (1955), 270 Wis. 325, 331, 71 N. W. (2d) 408.

In examining Mr. Schilling's conduct, it may be tempting to conclude that because he could not reasonably have foreseen the hazard of a falling box, he should not be called negligent. Nevertheless, one who permits his elbow to project from the window of an automobile may be deemed negligent under many circumstances; the fact that the instant injury occurred in an extraordinary fashion should not preclude the trier of fact from concluding that Mr. Schilling committed an act of negligence.

Even though the jury found Mr. Schilling's act to have been negligent, this court is convinced that a desirable public policy requires that he should not be charged with any liability therefor. This is one of those unusual cases in which the judicial determination should be made in favor of Mr. Schilling holding him free of any effect of his negligence. It would be unjust to surcharge Mr. Schilling for his negligence in permitting his elbow to extend from his car window when it was struck by an object emanating from another vehicle

which was passing well over on the other side of the highway. This injury could have occurred if he had been driving nonnegligently in an open convertible instead of negligently with his elbow protruding from the window of his sedan.

We cannot hold Mr. Schilling's conduct to be nonnegligent as a matter of law or hold that there was no duty on his part to use reasonable care. Nevertheless, upon these facts, public policy precludes the attachment of liability for his conduct.

Upon remand, the circuit court should enter judgment in favor of the plaintiff for the full amount of his damages notwithstanding the jury's assessment to him of 50 percent of the negligence.

### The Insurance Coverage Problem.

The policy of liability insurance issued to Mr. Stockel by State Farm Mutual, covering his own vehicle, contained the following provision:

"INSURING AGREEMENT II—NON-OWNED AUTOMOBILES

"Such insurance as is afforded by this policy under coverages A, B, Division 2 of C and M, D, D-50, F, G and H with respect to the automobile applies to the use of a non-owned automobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization.

"*Insuring Agreement II does not apply:*

"(1) to a non-owned automobile (a) . . . (b) . . . (c) while used in the business or occupation of such named insured or relative except a private passenger automobile operated or occupied by such named insured, relative, or by his private chauffeur or domestic servant."

State Farm Mutual contends that no coverage is afforded under the foregoing provisions for the operation of a non-owned automobile if the vehicle is being used in the business of the insured and is not a private passenger automobile.

However, Mr. Stockel's operation of Mr. Johns' vehicle was covered under the terms of the State Farm policy even though it was used in Mr. Stockel's business if Mr. Johns' vehicle was a private passenger automobile.

Considerable testimony was taken concerning the nature and purpose of the trip. It appears that Mr. Stockel operated a tavern as his business, that the articles he picked up were in the nature of business fixtures and not commodities for sale, and that the commodities he held for sale were delivered by others. It is clear that Mr. Stockel was in no manner engaged in the trucking or hauling business. No issue is raised on appeal as to whether the vehicle was being used in Mr. Stockel's business. We will, therefore, assume without deciding that the vehicle was being "used in the business of the insured."

We must decide whether there is any credible evidence, or reasonable inferences therefrom, to sustain the jury's finding that the Studebaker pickup was not "a type of vehicle other than a 'private passenger automobile' as that phrase is defined and used in the insurance policy issued by State Farm Mutual Automobile Insurance Company to Bernard Stockel."

The State Farm Mutual policy contains these definitions:

*"Private Passenger Automobile*—means a private passenger, station wagon or jeep type automobile."

*"Utility Automobile*—means an automobile with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type."

The learned trial judge, in dealing with the problem in a memorandum opinion upon motion for summary judgment, stated as follows:

"We are not persuaded that it can be held as a matter of law that the Studebaker pickup truck being driven by defendant Stockel at the time of the accident constituted a 'private passenger automobile' as that term is defined in State Farm's

policy. We are convinced that the inferences which may reasonably be drawn from the meager description of the vehicle contained in the record herein are doubtful and uncertain and should be resolved by a jury.

"The definition of a 'private passenger automobile' set forth in the insurance contract is vague, ambiguous and uncertain. It states that a private passenger automobile is any one of three types of vehicles, viz:

"1. It is a station wagon, or

"2. It is a jeep type automobile, or

"3. It is a private passenger automobile.

"This definition is far from enlightening and certainly not free of ambiguity. The third alternative merely restates the phrase which is being thereby defined. The first two alternatives do not seem applicable to the instant problem, and hence we are left with a definition which states that the term 'private passenger automobile' means a private passenger automobile. We therefore apply the rule found in *Meiser v. Aetna Casualty & Surety Co.* (1959), 8 Wis. (2d) 233, 238, 98 N. W. (2d) 919.

" 'An insurer may, of course, cut off liability under its policy with a clear language, but it cannot do so with that dulled by ambiguity,' and the further rule set forth in *State Department of Public Welfare v. Central Standard Life Ins. Co.* (1963), 19 Wis. (2d) 426, 433, 120 N. W. (2d) 687.

" 'If an insurance company in writing its policy fails so to write a provision as to indicate with reasonable certainty what it means by the provision it has no just cause for complaint that the provision is given a reasonable construction contrary to its contention although its contention may also have reason to support it. In such case we will not do any fine or precise balancing of reasons or splitting of the hairs for the purpose of upholding the company's contention.' "

We agree with the trial judge that the language employed by State Farm Mutual does not clearly cut off its liability even though it may have intended to do so. The provisions of the policy when read as a whole are not clear or readily

understood by a person of average intelligence. An ambiguity exists in the language of the policy. There was a jury issue as to whether the vehicle owned by Mr. Johns was a passenger-type automobile. See *Poncino v. Sierra Nevada Life & Casualty Co.* (Cal. 1930), 104 Cal. App. 671, 286 Pac. 729.

Because of the evidence as to the size, construction, appearance, actual use and customary use in the community, and comparable premium rates, we conclude that the jury could draw the reasonable and permissible inference that the Studebaker pickup was a passenger-type automobile. It follows that the plaintiff is entitled to judgment against all the defendants.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

FAIRCHILD, J. (*concurring in part*). I agree that the jury could properly find plaintiff negligent with respect to driving with his elbow out the window. But I would favor the return of the case for a new comparison of negligence, holding that as a matter of law defendant's negligence as disclosed by the record, substantially exceeded that of plaintiff. I respectfully disagree with the proposition that the chain of events leading to the injury was so unusual that there should be judicial intervention on policy grounds to free Mr. Schilling from reduction of his recovery on account of his negligence. See *Longberg v. H. L. Green Co.* (1962), 15 Wis. (2d) 505, 516, 113 N. W. (2d) 129, 114 N. W. (2d) 435.

I am authorized to state that Mr. Justice HALLOWS joins in this opinion.

BEILFUSS, J. (*concurring*). I agree that judgment should be reversed and remanded for judgment on the verdict for

damages as found by the jury in favor of the plaintiff and against all defendants.

It is my conclusion that plaintiff was not negligent as a matter of law.

The author of the A.L.R. annotation referred to in the majority opinion [1] states as follows:

"The main question raised by the cases contained in the present annotation is whether the extension of a hand, arm, or other portion of the body from a motor vehicle constitutes contributory negligence. The majority of cases have taken the view that this is a question for the jury, and the courts have generally sustained the verdict of the jury in favor of the plaintiff, although a few have taken the view that under the circumstances of the particular case the plaintiff's position constituted contributory negligence as a matter of law. . . .

"Every case, of course, turns upon its individual fact situation, . . ."

I emphatically agree with this general statement. In most instances it is a jury question as to whether the extension or protrusion of part of the body from a moving vehicle is negligence. I likewise agree there may be situations where risk of injury is so imminent or apparent that the conduct should be held to be negligence as a matter of law. The question before us now, however, is— Do the facts of this case compel a ruling that the plaintiff's conduct was not negligent as a matter of law?

In view of the fact that the jury found the plaintiff negligent and the trial court approved the finding, we must start our consideration of the problem with the limitation reiterated in *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. (2d) 286, 290, 128 N. W. (2d) 400:

"When a jury verdict is attacked we inquire only whether there is any credible evidence that, under any reasonable

---

[1] 40 A. L. R. (2d) 233, 235.

view, supports the verdict. This is especially so when the verdict has the trial court's approval. [Cases cited.]"

The trial court instructed the jury as follows:

"Now what do we mean by the word 'negligence' as it is used in these instructions? Negligence, as that term is used in these instructions and in this verdict, has the same meaning as the phrase 'failure to exercise ordinary care.' A person is negligent when he fails to exercise ordinary care. I will state that last sentence again: A person is negligent when he fails to exercise ordinary care. Ordinary care is that degree of care which the great mass of mankind ordinarily exercises under the same or simliar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person or property of himself or another to an unreasonable risk of injury or damage.

"In addition to this general definition of negligence there are several rules of law as well as statutes enacted by the legislature for the safe operation of motor vehicles on the highways. A person who fails to comply with such rules or statutes is negligent as that term is used in the verdict and in the Court's instructions. . . .

"Now Question 3 inquires as to whether Fred Schilling was negligent in caring for his own safety with respect to the position of his left arm. It is a rule of law that every person under all circumstances and whether on business or pleasure must exercise ordinary care for his own safety. This duty of self-preservation applied to Fred Schilling as he drove along Highway 11 on April 21, 1960. The exercise of such care includes such efficient use of one's eyes, faculties and opportunities for observation as an ordinarily prudent person would use under like circumstances. It is for you to determine under all of the facts and circumstances disclosed by the evidence whether Fred Schilling was or was not negligent in caring for his own safety with respect to the position of his left arm at the time and place of this accident."

This instruction is substantially taken from Wisconsin Jury Instructions.[2] It is based upon the definition of negligence as announced in *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372. This definition, with minor variations, has been adhered to by this court since its pronouncement and is used daily by the trial courts of this state in the multitude of negligence cases coming before them.

To sustain the finding that the plaintiff was negligent, the record must contain some credible evidence to support either that he (1) failed to exercise ordinary care, or (2) that he was negligent *per se*.

The undisputed facts insofar as the plaintiff's negligence is concerned are that he was proceeding along a standard 20-foot hard-surfaced highway with adjacent shoulders, on a clear, dry but windy April day, at a speed of 25 miles per hour, with left front window open and his left arm resting on the windowsill so as to protrude beyond the windowsill. Approaching from the opposite direction at a speed of 25 miles per hour was the small pickup-type vehicle driven by the defendant Stockel. Both vehicles were on their own right hand side of the highway with ample clearance space between them. As the two vehicles were meeting, the large box in the rear of defendant Stockel's vehicle flew off, struck the left front of the plaintiff's vehicle and then struck his arm at or near the elbow. The plaintiff was unaware of what struck him and the defendant did not know the box struck the plaintiff or his vehicle until after the accident.

The only evidence as to the position of the plaintiff's arm was his testimony to the effect that his arm was resting on the windowsill with both his hands on the steering wheel and his elbow within the outer limits of the area of the vehicle (because of the curve of the body of the car). The burden to

---

[2] Civil, Part I, 1005.

prove plaintiff's negligence was upon defendants. The only evidence offered and relied upon by them, in addition to plaintiff's evidence, was the statement of the defendant Stockel that plaintiff told him after the accident that he had his arm out of the window and it was struck. There was no testimony on the part of the defendants as to how far the plaintiff's arm was out of the window. Any belief that his arm was farther out than he testified is speculation or conjecture.

The plaintiff had the duty to exercise ordinary care for his own safety as to lookout, management and control, and observance of the statutory rules of the road as instructed by the trial court. The plaintiff was entitled to assume that the defendant would operate his vehicle exercising ordinary care, and that he would not violate the statutory rules of the road, including sec. 348.10 (2), Stats., pertaining to the safe loading of vehicles to be operated upon the highway.[3]

The degree of care plaintiff was required to exercise to come up to the standard of ordinary care was the care that would be exercised by the great mass of mankind under the same or similar circumstances. He was not required to exercise extraordinary care [4] or that of a very cautious person, but the same care as would have been exercised by an ordinarily prudent person under the same or similar circumstances.

There was nothing in the surrounding circumstances such as a vehicle in or deviating toward the plaintiff's line of travel, a vehicle with a wide load or protruding object, nor a narrow, rough, or slippery highway, nor was his vision obstructed by weather, darkness, or otherwise. Any of these or

[3] *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 295 N. W. 755; *Grover v. Sherman* (1934), 214 Wis. 152, 252 N. W. 680; Wis J I–Civil, Part I, 1030, and cases cited.

[4] *Hamus v. Weber* (1929), 199 Wis. 320, 325, 226 N. W. 392.

other circumstances could well increase the hazard or probability of harm which would have required commensurate increased vigilance to meet the standard of ordinary care. He could not be required by his duty to exercise an efficient lookout to know the nature of the defendant Stockel's load nor the manner in which the pickup was loaded. If he had been following the Stockel vehicle, or even been overtaken by him, he might have had notice of the defendant's load. Instead he was meeting the defendant Stockel in an apparently uneventful manner, with no notice of any hazard emanating from the defendant.

Would a person of ordinary intelligence and prudence foresee an unreasonable risk of harm under the circumstances described herein?

In recent cases dealing with negligence and foreseeability, we have stated:

"Ordinary care is such care as persons of ordinary prudence ordinarily exercise under like circumstances. The existing circumstances necessarily dictate what constitutes ordinary care in each instance. When the circumstances give rise to reasonable anticipation of injury, ordinary care includes the duty to act in accordance with that knowledge. As Mr. Justice FOWLER pointed out in *Hamus v. Weber* (1929), 199 Wis. 320, 325, 226 N. W. 392, ordinary care and the element of reasonable anticipation are the same. Negligence exists when the harm could have been reasonably foreseen as probable by a person of ordinary prudence under like circumstances." *Mondl v. F. W. Woolworth Co.* (1961), 12 Wis. (2d) 571, 573, 107 N. W. (2d) 472.

"Defendant in constructing the road was under the duty to use ordinary care which must be determined in the light of existing circumstances. *Mondl v. F. W. Woolworth Co.* (1961), 12 Wis. (2d) 571, 107 N. W. (2d) 472. The possibility of harm to the plaintiff's tower was foreseen by the defendant but the foreseeability of possible harm is not enough to constitute negligence. Harm must be reasonably foreseen as probable by a person of ordinary prudence under

like circumstances. *Mondl v. F. W. Woolworth Co., supra; Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372; *Barnes v. Murray* (1943), 243 Wis. 297, 10 N. W. (2d) 123. To constitute negligence, not only must the act involve a risk which the actor realizes or should realize but the risk must be unreasonable." *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 42, 117 N. W. (2d) 597.

"It is well established that harm must be reasonably foreseen as probable by a person of ordinary prudence under the circumstances, if conduct resulting in such harm is to constitute negligence." *Alsteen v. Gehl* (1963), 21 Wis. (2d) 349, 362, 124 N. W. (2d) 312.

The foreseeability required by the rule of the cases set forth above is that there must be a reasonable probability of harm, the mere possibility of harm is not enough. There must be a foreseeable unreasonable risk of harm.

Although I conclude that the conduct must be such that a person of ordinary intelligence and prudence can reasonably see probability of harm, he need not foresee the specific harm that is accomplished. It is only necessary that he foresee the reasonable probability of some harm in view of the existing circumstances. Without resort to speculation or conjecture, the evidence does not reveal any harm which could reasonably be anticipated or appear reasonably probable.

Foreseeability is foresight, not hindsight. Plaintiff's conduct must be judged at the time of or just before the accident and not what afterthought or hindsight would reveal to be a safer course of action in view of the results. As facetiously stated, "Almost anyone can exercise 20/20 hindsight."

Foreseeability required to constitute negligence is not to be confused with foreseeability insofar as it applies to causation in those instances wherein the court rules as a matter of judicial policy that liability is not to attach. Excepting

judicial-policy cases, if negligence is established foreseeability is not an element in cause of the injury.[5]

We are dealing here with negligence and not causation. Foreseeability is a necessary element to establish negligence. In this instance where the surrounding circumstances were such as to indicate to the plaintiff nothing but an uneventful meeting of two vehicles, it cannot be said that a person of ordinary intelligence or prudence could or should have foreseen a reasonable probability of any harm to himself.

The only other basis upon which the plaintiff could be found to be negligent is if his conduct was negligence *per se*.

In *Osborne v. Montgomery, supra,* page 240, it is stated:

"We come now to a consideration of that class of cases where foreseeability is not an element of negligence,—a more accurate statement would be to that class of cases where the defendant is foreclosed or concluded upon the question of foreseeability. In all those cases where it is said that, the performance of the wrongful act being admitted, the defendant is guilty of negligence as a matter of law or that the act is negligent *per se,* the case is one which admits of no question as to reasonable anticipation or foreseeability. These cases are those in the main where the act amounts to a violation of a standard of care fixed by statute (ordinance) or previous decision."

We have no statutory rule of the road that prohibits a person from resting his arm on the adjacent windowsill while operating a vehicle upon a highway, although the practice is not uncommon and has existed for many years. Nor has this practice been declared by court rule to be so inherently dangerous as to be declared to be negligence under all circumstances. If this conduct was inherently dangerous it is highly probable that among the multitude of reported

---

[5] *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29, and *Klassa v. Milwaukee Gas Light Co.* (1956), 273 Wis. 176, 77 N. W. (2d) 397, define causation and eliminate foreseeability as an element of causation.

cases of this court dealing with automobile accidents the problem would have presented itself heretofore.

The record has been reviewed in detail with care. I conclude the plaintiff was not negligent *per se*. I also conclude that there is not sufficient evidence in the record, nor reasonable inferences therefrom, which sustain the jury finding of negligence on the part of the plaintiff.

I would therefore reverse upon the ground that under the facts of this case the plaintiff was not negligent as a matter of law.