Kevin M. ROLPH, Plaintiff,

v.

. EBI COMPANIES and E.L. Essley Machinery Company, Defendants,

BUFFALO FORGE COMPANY and Liberty Mutual Insurance Company, Defendants-Third Party Plaintiffs-Appellants,

v.

J.C. BUSCH COMPANY, INC., Third Party Defendant-Respondent.

Supreme Court

*No. 89-0708. Argued September 4, 1990.—Decided January 25, 1991.*

(On certification from the court of appeals.)

(Also reported in 464 N.W.2d 667.)

519

520

521

For the defendants-third party plaintiffs-appellants there were briefs (in the court of appeals) by *John M. Swietlik, John E. Cain* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee and oral argument by *John Swietlik.*

For the third party defendant-respondent there was a brief (in the court of appeals) by *L. William Staudenmaier, Carolyn A. Yagla* and *Cooke & Franke, S.C.,* Milwaukee and oral argument by *Mr. Staudenmaier.*

LOUIS J. CECI, J.   This case is before the court on certification from the court of appeals, pursuant to

sec. (Rule) 809.61, Stats. The plaintiff, Kevin M. Rolph, commenced a personal injury action against the defendant Buffalo Forge Company (Buffalo); its insurer, Liberty Mutual Insurance Company; and other parties which are not before the court in this appeal. The plaintiff alleged, *inter alia,* that Buffalo had manufactured a defective and unreasonably dangerous bending roll machine (the machine) in which he caught his hand and thereby received injuries. The plaintiff further alleged that Buffalo was liable in tort, under the doctrine of strict products liability or negligence, for the injuries he received as a result of the defective and unreasonably dangerous condition of the machine. Buffalo, in turn, commenced a third-party action against J.C. Busch Company, Inc. (Busch), who had reconditioned the machine approximately two years before the plaintiff was injured, alleging that if Buffalo was liable to the plaintiff, it was entitled to indemnification or contribution from Busch on the theory that Busch should have cured the unreasonably dangerous defect in the machine when it reconditioned it.

Buffalo appeals from a judgment of the circuit court for Fond du Lac county, Henry B. Buslee, Circuit Judge. The circuit court granted summary judgment in favor of Busch, dismissing the third-party complaint filed against it. In granting summary judgment, the court ruled that Busch did not have a duty to correct the allegedly defective and unreasonably dangerous condition of the machine regardless of whether the underlying theory of liability sounds in strict tort or negligence.

Two issues are presented on this appeal.[1] The first issue is whether a reconditioner[2] may be strictly liable for unreasonably dangerous defects in the machines it reconditions. The second issue is whether a reconditioner has a duty under ordinary principles of negligence to ensure that the machines it reconditions are in compliance with safety standards when it returns them to their owners. We hold that a reconditioner who does not manufacture, distribute, or sell the products it reconditions is not liable in strict products liability for the defects in the machines it reconditions. We further hold that a reconditioner does not have a duty to bring the machines it reconditions into compliance with applicable safety standards in effect when it reconditions the machines so long as it does not hold itself out as bringing machines into compliance with safety standards and is not requested to do so by the machine's owner.[3] Accord-

---

[1]The circuit court framed the issue as whether a reconstructor has a duty under the principles of strict products liability or negligence to bring a machine it reconstructs into conformity with applicable safety standards. The trial court held that the issue of duty was the same whether the underlying theory of liability is strict tort or negligence. We analyze the strict products liability and negligence theories separately.

[2]The court of appeals used the term reconstructor in its certification. We choose to use the term reconditioner instead because it is the term the parties used prior to the commencement of litigation and because the term more accurately reflects the facts as they appear in the record. While it is true Busch took apart and "reconstructed" the machine, the record shows that it did so as part of reconditioning the machine. Furthermore, we would reach the same result under these facts whether Busch is labeled a "reconditioner" or a "reconstructor."

[3]The record shows that the reconditioner in this case did not sell the machine after reconditioning it. Instead, it reconditioned the machine at the request of the machine's owner. Accordingly,

ingly, we affirm the judgment of the circuit court.

The facts of this case follow. The facts relevant to this appeal are not in dispute. On August 26, 1986, the plaintiff was injured when his hand became entrapped while he was operating the machine. The plaintiff commenced an action against the manufacturer of the machine, Buffalo; its insurer, Liberty Mutual Insurance Company; and other parties not before this court in this appeal. The plaintiff alleged that Buffalo had failed to use ordinary care in the design, manufacture, packaging, labeling, formulation and application of warnings pertinent to the machine, and dissemination of information applicable to the machine. The plaintiff also alleged that the machine was in a defective and unreasonably dangerous condition when Buffalo sold it. Buffalo commenced a third-party action against Busch, alleging that Busch had failed to exercise ordinary care when it reconditioned the machine and that if the machine was in fact defective, Buffalo would be entitled to contribution or indemnification from Busch. The plaintiff did not sue Busch directly.

Busch subsequently filed a motion for summary judgment against Buffalo, arguing that regardless of the nature of the underlying claim, a reconditioner does not owe a duty to correct the unsafe conditions of a machine it reconditions according to the directions of the machine's owner. In support of its motion, Busch relied upon two cases from other jurisdictions in which the courts held that reconditioners and repairers do not have a duty to correct the defective or unsafe conditions of the machines they service, *Barry v. Stevens Equipment Co.,* 176 Ga. App. 27, 335 S.E.2d 129 (1985), and *Johnson v.*

we do not address whether a reconditioner could be liable in strict products liability or negligence if it sold a used machine it reconditioned, thereby placing it in the stream of commerce.

*William C. Ellis & Sons Iron Works,* 604 F.2d 950 (5th Cir. 1979).

Busch also relied upon the deposition testimony of Norman Behnke, an employee of the owner of the machine, Brenner Tank, Inc. (Brenner),[4] and upon the invoice for the work it performed for Brenner. Mr. Behnke testified that Brenner did not request that Busch evaluate the safety of the machine, did not expect Busch would correct any safety problem with the machine, and did not expect Busch to warn it if the machine was in an unsafe condition or a new safety device was available. The invoice billed Brenner for reconditioning of the machine which was described as disassembly, cleaning, inspecting parts for wear, and replacing certain parts.

In opposition to the motion for summary judgment, Buffalo chiefly relied upon *Michalko v. Cooke Color & Chemical Corp.,* 91 N.J. 386, 451 A.2d 179 (1982). In *Michalko,* the court held that a rebuilder of machinery has a duty to incorporate safety devices in the equipment it rebuilds when it is feasible to do so. The court further held that the fact that a machine was rebuilt according to the specifications of the owner does not absolve the rebuilder of this duty. *Id.,* 91 N.J. at 395, 451 A.2d at 183.

Buffalo also relied upon the deposition testimony of two expert witnesses, Stanley Weiss and Professor Bobbie L. Richardson. Both experts testified that in their opinion, under American National Standards Institute (ANSI) standards for reconstructors of roll formers or roll benders that existed at the time of the accident,

---

[4]EBI Companies (EBI) is Brenner's representative in this litigation and has a subrogation claim against the defendants in the action underlying this appeal. However, neither Brenner nor EBI is before this court in this appeal.

Busch had a duty to bring the machine in question up to current safety standards. Both experts further testified that Busch violated this duty when it failed to install an emergency stop device that would have prevented the plaintiff's injuries.

The circuit court heard the motion for summary judgment on March 9, 1989. By order entered March 10, 1989, the circuit court granted summary judgment to Busch, dismissing the third-party complaint filed against it. In granting the motion, the circuit court ruled that Busch did not have a duty to bring the machine up to the ANSI standards when it reconditioned it.

Buffalo appealed from the judgment of the circuit court, and the court of appeals certified the appeal to this court.

In reviewing the grant of a motion for summary judgment, this court applies the standards set forth in sec. 802.08(2), Stats., in the same manner as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Under the standard procedure for evaluating the propriety of a motion for summary judgment, a court first examines the pleadings to determine whether a claim for relief has been stated. If a claim for relief has been stated, the court then determines whether there are triable issues of material fact which preclude the grant of summary judgment. *Id.* at 314–15. If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, a motion for summary judgment should be granted. Section 802.08(2).

The record shows that the facts material to Buffalo's third-party claim are not in dispute and that the

527

trial court granted Busch's motion for summary judgment on the grounds that it did not have a duty to bring the machine up to present-day safety standards when it reconditioned the machine. Accordingly, determining whether the circuit court properly granted summary judgment in favor of Busch turns on whether Busch was entitled to judgment as a matter of law. In this case, whether Busch was entitled to judgment as a matter of law depends on whether Busch, as a reconditioner, is subject to strict products liability and whether Busch had a duty under ordinary principles of negligence to bring the machine into compliance with the safety standards in effect when it reconditioned the machine.

The application of strict liability to an undisputed set of facts is a question of law. *Mulhern v. Outboard Marine Corp.*, 146 Wis. 2d 604, 611, 432 N.W.2d 130 (Ct. App. 1988). Whether a party owes a duty to another party and the scope of that duty are questions of law. *Fitzgerald v. Ludwig*, 41 Wis. 2d 635, 639, 165 N.W.2d 158 (1969). This court decides questions of law independently and without deference to the trial court's decision. *Ball v. District No. 4, Area Board*, 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). Accordingly, we will decide the issues of this case without deference to the circuit court's decision.

The record shows that Busch is not in the business of manufacturing, distributing, or selling machines like the one that allegedly caused the plaintiff's injuries. The record further shows that Busch did not sell the machine allegedly responsible for the plaintiff's injuries. Busch merely reconditioned the machine as directed by its owner and returned the machine to its owner.

Under Restatement (Second) of Torts, sec. 402A (1965), adopted in Wisconsin in *Dippel v. Sciano*, 37

Wis. 2d 443, 155 N.W.2d 55 (1967), a defendant may not be liable in strict products liability unless, *inter alia,* it manufactures, distributes, or sells the product in question. To date, Wisconsin courts have imposed strict products liability in two categories of cases despite the lack of a technical sale.

In *Mulhern,* the court of appeals held that a defendant may be strictly liable even though it did not sell the product in question if the defendant is in the business of selling the product and places the product in the stream of commerce by supplying it to a consumer. 146 Wis. 2d at 612–14.

Recently, this court indicated in *Kemp v. Miller,* 154 Wis. 2d 538, 453 N.W.2d 872 (1990), that a defendant may be liable in strict products liability despite the absence of a technical sale if imposing liability would serve the policies underlying strict liability. *Id.* at 556–57. Specifically, this court in *Kemp* held that "a commercial lessor may be held strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous product." *Id.* at 558.

The rationale underlying this court's holding in *Kemp* was that imposing strict liability would serve the policies underlying strict liability. The court identified those policies as imposing the risk of loss associated with the use of defective products on the party that created and assumed the risk, reaped the profit by placing it in the stream of commerce, impliedly represented that the product was safe and fit for use by placing it in the stream of commerce, and had the ability to implement procedures to avoid the distribution of defective products in the future. *Id.* at 556–57.

Neither *Mulhern* nor *Kemp* justifies imposing strict products liability on Busch despite the fact that Busch

did not sell the machine in question. *Mulhern* does not apply to Busch because the record shows that Busch is not in the business of selling products like the machine which allegedly caused the plaintiff's injuries.

In this regard, *Michalko,* 91 N.J. 386, 451 A.2d 179, upon which Buffalo relies, is also distinguishable. In *Michalko,* the reconditioner was in the business of manufacturing and selling the type of machine that injured the plaintiff and, in fact, both manufactured and reconditioned the very machine that injured the plaintiff. *Id.,* 91 N.J. at 391, 451 A.2d at 181–82.

Furthermore, the public policy considerations that justified the imposition of strict products liability on lessors in *Kemp* do not support the imposition of strict liability on reconditioners. Busch did not create the risk by manufacturing the allegedly defective and unreasonably dangerous machine. Busch simply "reconditioned" the machine, a process the record shows is nothing more than a very thorough cleaning and repair job that includes taking a machine apart, replacing worn parts, and reassembling the machine. Any profit Busch reaped was from reconditioning the machine, not from placing it in the stream of commerce. Buffalo is the party that reaped profit by placing the machine in the stream of commerce.

Busch did not impliedly represent that the machine was safe and fit for use by placing it in the stream of commerce. Rather, Buffalo placed the machine in the stream of commerce, and the record shows that Busch only performed work on the machine after it was in the stream of commerce. In *Kemp,* this court, in justifying the imposition of strict products liability on lessors, specifically pointed to a lessee's reliance on a lessor's

"implied assurance that a product will be safe for use during the term of the lease." *Kemp,* 154 Wis. 2d at 555. However, the record shows that Brenner, the machine's owner, did not rely on Busch's reconditioning to make the machine safe.

Finally, there is evidence in the record to support the conclusion that Busch, unlike the lessor in *Kemp,* is not in a position to avoid the distribution of defective products in the future. The record shows that Busch works on many different types of machines and, therefore, could not possibly keep abreast of all the new safety devices that are available for different types of machinery. In contrast, this court noted in *Kemp* that commercial lessors are familiar with the products they lease and, therefore, are in a position to discover and correct defects in them. *Id.* at 557.

In this regard, Busch is in a position similar to the seller of used products who is sued for defects that arise after manufacture and before the product reaches the seller. The alleged defect in the machine arose after it was manufactured (the machine, according to undisputed deposition testimony in the record, did not comply with safety standards promulgated long after the machine was produced) and before Busch reconditioned the machine.

In *Burrows v. Follett & Leach, Inc.,* 115 Wis. 2d 272, 340 N.W.2d 485 (1983), this court held that it would not impose strict products liability upon a seller of used goods for defects that arise after manufacture and before the product reaches the seller. In *Kemp,* this court explained that its holding in *Burrows* was based upon the realization that to impose liability on a seller of used products for defects that arise after manufacture and

531

before the product reaches the seller would be to impose liability upon a party that did not create or assume the risk and was not in a position to implement procedures to avoid the distribution of defective products in the future. *Kemp,* 154 Wis. 2d at 556–57.

The foregoing analysis illustrates that the same policies that supported this court's holding in *Burrows* support the conclusion that strict products liability does not apply to reconditioners that conduct their business in the same manner as Busch. Furthermore, Busch cannot be liable in strict products liability because it does not manufacture, distribute, or sell the machine in question and does not fall into any of the categories in which strict products liability is imposed despite the lack of a technical sale.

The second issue before this court is whether a reconditioner owes a duty under ordinary principles of negligence to the owner of a machine it is reconditioning, or to third parties, to bring the machine into compliance with present-day safety standards when it reconditions a machine. In *Schuster v. Altenberg,* 144 Wis. 2d 223, 424 N.W.2d 159 (1988), this court explained the proper analysis of duty in Wisconsin as follows:

> 'A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs.

\* \* \*

'As held in *Schilling [v. Stockel,* 26 Wis. 2d 525, 133 N.W.2d 335 (1965)], once it is determined that a negligent act has been committed and that the act is a substantial factor in causing the harm, the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy.'

*Id.* at 235 (quoting *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 484–85, 214 N.W.2d 764 (1974)).

A finding of nonliability made in terms of public policy is a question of proximate cause. *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 275 N.W.2d 660 (1979).[5] However, we held in *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990), that:

the imposition of liability in a given situation is a question of policy whether the liability is regulated by the notion of duty, or whether liability is cut off after all the elements of negligence have been established, as more recent cases of this court have stated.

*Id.* at 679–80 (citations omitted). Furthermore, a finding of nonliability in terms of public policy is a question of law which the court alone decides. *Morgan,* 87 Wis. 2d at 737.

---

[5]In Wisconsin, "Legal cause in negligence actions is made up of two components, cause-in-fact and 'proximate cause,' or policy considerations." *Morgan,* 87 Wis. 2d at 735. Proximate cause, or public policy considerations, are "not a part of the determinations of cause in fact, which this court refers to as 'substantial factor.' " *Howard v. Mt. Sinai Hospital, Inc.,* 63 Wis. 2d 515, 518–19, 217 N.W.2d 383, 219 N.W.2d 576 (1974).

The essential rationale for limiting liability on the grounds of public policy is that the imposition of liability " 'would shock the conscience of society.' " *Schilling,* 26 Wis. 2d at 533 (quoting *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 238, 55 N.W.2d 29 (1952)). We have indicated that the following factors are to be considered in determining whether imposing liability is against public policy:

> (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point.

*Coffey v. Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976).

Ordinarily, this court will not limit liability on public policy grounds without a full factual resolution of the claims at trial. *Schuster,* 144 Wis. 2d at 241. In particular, where the issues are complex or factual connections are attenuated, a full trial must precede the court's determination. *Hass v. Chicago & North Western Ry. Co.,* 48 Wis. 2d 321, 326–27, 179 N.W.2d 885 (1970).

However, all cases do not "require a full factual resolution of the cause of action by trial before policy factors will be applied by the court." *Id.* at 327. Therefore, this court considers limiting liability on public policy grounds when reviewing trial court decisions which

grant motions to dismiss or for summary judgment. *See, e.g., Nelson,* 155 Wis. 2d 674 (affirming grant of summary judgment on public policy grounds), and *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 219 N.W.2d 242 (1974) (reversing a denial of a demurrer for failure to state a claim on public policy grounds).

In *Schuster,* we outlined the conditions that must be present before we will limit liability without a full trial. First, both parties must have sought resolution of the public policy considerations implicated in the case. Second, the record before the court must contain the information necessary to review the policy considerations. Third, the trial judge must have fully addressed the policy issues he found determinative. *Schuster,* 144 Wis. 2d at 241. In addition, as previously discussed, this court will not make a finding of nonliability prior to a full trial if the issues are complex or the factual connections are attenuated. *Hass,* 48 Wis. 2d at 326–27.

In the case at bar, Busch argues that this court should hold that it is not liable for failing to correct or warn of the design defect in the machine it reconditioned because allowance of recovery would enter a field that has no sensible or just stopping point. We agree. Imposing liability on Busch for failing to correct a design defect simply because it reconditioned the machine would make all repairers who disassemble a product in order to repair it insurers against design defects created by manufacturers.

For example, an auto mechanic who disassembled a car's steering system in order to repair it would be liable for failing to correct or warn of defects in the design of the steering system. Every business that services equipment would be exposed to liability if the repair required

535

disassembly of the product. Such liability would shock the conscience of society because it would have no sensible or just stopping point.

Recently, the Georgia Court of Appeals also held that a reconditioner is not liable under ordinary principles of negligence if it does not take measures to correct the design defects of the machines it reconditions or warn its owner of the defect. *Barry,* 176 Ga. App. at 27–28, 335 S.E.2d at 130–31. In *Barry,* the plaintiff sued a company that repaired and refurbished the machine which injured his hand on the theory that the company should have attached safety equipment to the machine or warned his employer of its dangerous design. The refurbishing job included the complete disassembly and reassembly of the machine. The owner of the machine did not request that the company bring the machine into compliance with existing safety standards. *Id.,* 176 Ga. App. at 27, 335 S.E.2d at 130.

The court held that the defendant company did not have a duty under ordinary principles of negligence to take measures to correct the machine's dangerous condition or warn its owner of the danger. *Id.,* 176 Ga. App. at 29–30, 335 N.E.2d at 131. The facts of this case are very similar to the facts of *Barry.* The record shows that Busch, like the defendant in *Barry,* completely disassembled the machine, replaced some parts, and rebuilt the machine according to the owner's directions, which did not include a request to bring the machine into compliance with existing safety standards.

Furthermore, contrary to Buffalo's contention, the *Barry* court's holding on the negligence claim was not based upon Georgia's strict liability statute which only imposes strict products liability on manufacturers. Rather, the *Barry* court's rationale is equally applicable in the context of Wisconsin jurisprudence: no authority

exists which supports imposing common law negligence liability on a reconditioner for failing to correct design defects created by manufacturers.

Buffalo's attempt to create a duty on the part of Busch by citing ANSI standards is misplaced. This court's finding of nonliability makes the ANSI standards irrelevant unless the record shows that Busch undertook to bring the machine into compliance with the standards in one of two ways. First, the standards are relevant if Busch held itself out as a business that brings machines into compliance with present-day engineering standards. Second, the standards are relevant if Busch was requested to bring the machine into compliance with present-day engineering standards.

The record shows that the owner of the machine, Brenner, did not request that Busch bring the machine into compliance with the ANSI standards. There is no evidence in the record to suggest that Busch held itself out as a business that brings machines into compliance with present-day engineering standards when it reconditions them. In fact, there is undisputed evidence in the record to support the conclusion that Busch did not hold itself out as a business that brings machines into compliance with present-day safety standards when it reconditions them: Brenner employee Norman Behnke testified in his deposition that Brenner did not expect Busch to correct any safety defects in the machine or even warn it of any such defects.

Given the evidence in the record, it is the manufacturer, such as Buffalo, not the reconditioner, that has a duty to advise the owners of its machines of design defects and safety devices to bring the machine into compliance with present-day safety standards. We therefore affirm the judgment of the circuit court which

537

granted summary judgment in favor of the third-party defendant, J.C. Busch Company, Inc.

*By the Court.*—The judgment of the circuit court is affirmed.

CALLOW, J., did not participate.