[Civ. No. 5140. Third Appellate District.—November 9, 1934.]

GAYLE WHITTAKER GAUMNITZ, Respondent, v. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Appellant.

Sutherland, Dearing & Jertberg for Appellant.

Conley, Conley & Conley for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $1607.92 which was rendered pursuant to the verdict of a jury returned in a suit on an insurance policy on account of the death of plaintiff's husband as the result of an automobile casualty. The indemnity company claims it is specifically exempted from liability by the terms of the policy for the reason that the insured was killed while riding in a truck. It is also asserted the court erred in admitting expert testimony as to the classification of the machine, and that plaintiff's attorney was guilty of prejudicial misconduct in the course of his argument to the jury.

The plaintiff was the wife of E. B. Whittaker who was insured by the defendant in the sum of $1500 against injury or death "(A) While operating, riding in, demonstrating, adjusting or cranking an automobile." He was the owner of a light Ford pickup machine, in which he was riding on August 10, 1932, when he was killed as the result of a collision. The policy, which was then in full force, contains the following exemption clause, "This policy shall not cover injuries (fatal or otherwise) or any loss or disablement sustained: . . . (6) while operating, riding in or on, demonstrating, adjusting or cranking any . . . automobile *truck*, . . . "

Demand for the payment of the policy was duly made and refused. A suit on the policy was then commenced. It was tried with a jury which returned a verdict for the amount of the policy and interest thereon in favor of the plaintiff. A motion for a directed verdict was denied. Judgment was rendered pursuant to the verdict. From that judgment the defendant has appealed.

The record contains competent, satisfactory evidence that the machine in which Whittaker was riding at the time of his death was a light Ford pickup automobile, and that it was not an "automobile truck" as that term is used in the exclusion clause of the policy. Several photographs of the machine were admitted in evidence without objection. A prospectus containing pictures of the various types of automobiles which are manufactured by the Henry Ford industry was also received in evidence without objection. The illustration contained in the pamphlet, corresponding with the machine which is involved in this case,

is called a "Ford pickup open cab". A number of automobile agents, with several years of experience in selling Ford machines, testified regarding the construction and classification of a Ford pickup cab as distinguished from an automobile truck, as those terms are known to the trade. Several witnesses said the machine in question was a Ford pickup cab, and on the contrary that it was not an automobile truck.

Mr. Short, who was called as a witness by the defendant, testified in that regard: "It is a '29 closed cab, steel body, with a steel pickup body on behind it. . . . (It is) listed here (on the Ford advertising pamphlet) as a pickup closed cab." Mr. Rhine testified: "It is not a truck. . . . It was designed for a light pickup. . . . The maximum capacity which the car was designed to carry (is) one-thousand pounds. . . . The pickup has the same chassis, same tires, same everything but the body that a pleasure car has. . . . Because the manufacturer does not list it as a truck, it is never sold as a truck. . . . The chassis of this car was the same as that of a 'A' Ford passenger car. Q: And is that true of the tires also? A. Yes sir. Q. How does the truck differ from that type of car with regard to construction, generally speaking, is it heavier construction? A. Yes sir." Mr. Gordon testified that that particular car was not equipped with "commercial springs", with which another witness had said that heavier machines were supplied. He said this machine was used to convey a mechanic's tools to and from his work, and for pleasure and general family use. Mr. Lewis testified that it was used to convey from a farm "different little things". He said it was intended for "light delivery". It is almost common knowledge that a light machine of that nature is used as a convenient means of business transportation for the owner and to convey tools, and small, light equipment and packages. It is common knowledge that no one refers to a machine of that type as a "truck". There is no substantial evidence to the contrary.

█ A truck, as that term is employed in the exemption clause of the policy evidently refers to an automobile designed to carry heavy inanimate loads of produce or materials as distinguished from a "pickup cab" which is

constructed and intended to convey only light loads. The New Universities Dictionary of 1927 defines a truck as "A heavy automobile on solid tires built to carry a load of from three to ten tons." In the case of *Paltani* v. *Sentinel Life Ins. Co.*, 121 Neb. 447 [237 N. W. 392], the term "truck" is defined as "a wheeled vehicle for carrying heavy weight; an automobile for transporting heavy loads". In construing a statute providing for license fees to be paid for operating motor vehicles, it was said in *Hemlock 6400 Tire Co.* v. *McLemore*, 151 Tenn. 99 [268 S. W. 116], that "a truck, as distinguished from a Ford machine with wagon-shaped box which was used to carry tools and light articles", was a "heavy, slow-moving, freight vehicle causing heavy road wear", and used for transporting merchandise and other heavy articles. Certainly a light Ford pickup cab, with a maximum capacity of only 1,000 pounds which is used by an electrician or mechanic to transport the light tools with which he is employed, or which is used to convey light loads, or for family convenience or pleasure, may not be said to be an "automobile truck", so as to defeat a liability under the provisions of an insurance policy indemnifying against injury or death resulting from an accident while riding in an automobile.

We are of the opinion the court did not err in receiving expert testimony regarding the construction of the machine in question and the heavier construction of an automobile truck. The determination of the qualifications entitling these witnesses to explain the character of the construction of a Ford pickup cab as distinguished from an automobile truck was largely in the discretion of the court, and the exercise of that discretion will not be interfered with in the absence of a clear showing of an abuse thereof. The rule is well established that a mechanic who is familiar with a certain machine may testify regarding the construction or operation of the device. On the same principle, an automobile salesman who is familiar with the construction of a particular type of machine may testify to such facts regarding the construction as are within his knowledge. Such an expert salesman may also testify from his knowledge of the difference in construction between a light machine and a truck, and from his knowledge of the appearance and the difference between the construc-

tion of a pickup cab and a truck, as these types of machines are known to the trade, that a certain machine is a pickup cab and that on the contrary, it is not a truck. If the difference between a pickup cab and a truck is within the common knowledge of all, then there was no harm in admitting this expert evidence. If it is not common knowledge, then expert evidence on that subject is competent. We have no doubt it is proper to admit expert evidence to identify a particular type of automobile as it is known to the trade. It is competent for an expert witness to identify a particular automobile as a sedan, coupe, pickup or truck from his knowledge of its construction and appearance, just as it is competent, in a suit for breach of contract, to introduce expert evidence to distinguish the Tokay from the Mission variety of grapes, or the Holstein from the Jersey breed of cattle. There was no error in permitting expert witnesses to testify that the automobile in question was not a truck.

 The prejudicial statements of plaintiff's attorney which were made in the course of his argument to the jury do not constitute reversible error for the reasons that the court instructed the jury to disregard them and because the only real issue in the case is whether the automobile in question is a truck and the implied finding of the jury on that issue is in accord with the only sensible manner in which it could have been determined under the evidence. We are therefore thoroughly satisfied that there was no miscarriage of justice in this case.

Three separate statements of plaintiff's attorney were assigned as prejudicial. The first one in effect charged the defendant with being a wealthy insurance company which was trying to ''chisel the plaintiff out of her money''. The second one assumed that the policy was issued with reference to the particular machine in which Whittaker was riding at the time of the accident which resulted in his death, the character of which machine was known to the company; that the company insured the deceased against injury or death while riding in his Ford pickup cab, and after his death attempted to escape liability by calling it a truck. The third statement was a declaration that counsel knew the plaintiff ''was right'' in her contention, and he

then reiterated his assertion that the company was "attempting to chisel her out of her money".

Following each of these challenged statements, at the request of counsel for the defendant, the court, in effect, charged the jury to disregard them. It is contended the court did not directly do so. The language of the court is not as explicit as it might have been, but we are certain the jury must have understood the court to charge them to disregard these particular statements. The admonition regarding the first statement was made in the following language: "As to whether or not any payment had been made on the policy, why, you are not to consider it at all, it is not proper for your consideration, so you will disabuse it from your mind." Regarding the second statement, the court said: "The jury will abide by the evidence in the case and remember that arguments of counsel are not evidence." The charge of the court following the third statement was in this language: "The jury is instructed to disregard the remark and decide the case on the evidence here that is in the record." And finally the court said: "The jury is instructed to disregard the passionate remarks of counsel on either side and decide this case solely and exclusively on the law and the evidence. Of course, if juries don't do it, it will be the duty of the court to set your verdict aside." These admonitions were directed toward the defendant's specific assignments of prejudicial statements on the part of plaintiff's attorney, and clearly infer that the court deemed them to be improper and directed the jury to disregard them.

With the well-known antipathy of jurors toward insurance companies, these unwarranted statements should not have been made. They indicate an excess of zeal and indiscretion on the part of counsel. But, in view of the fact that we assume the jury could have justly returned no other verdict which would accord with the evidence, we are of the opinion these statements do not constitute reversible error.

The judgment is affirmed

Plummer, J., and Pullen, P. J., concurred.