[Civ. No. 29655. Second Dist., Div. Two. Sept. 14, 1966.]

FARMERS INSURANCE EXCHANGE, Plaintiff, Cross-defendant and Respondent, v. KARL FREDERICK, JR., Defendant, Cross-complainant and Appellant; FACTORY MUTUAL LIABILITY INSURANCE COMPANY OF AMERICA et al., Cross-defendants and Respondents.

Wiener & Wiener and Robert A. Klein for Defendant, Cross-complainant and Appellant.

Early, Maslach, Foran & Williams and Harry Boyd for Plaintiff, Cross-defendant and Respondent.

Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligsan as Amici Curiae for Plaintiff, Cross-defendant and Respondent.

Ives, Kirwan & Dibble and Eugene S. Ives for Cross-defendants and Respondents.

ROTH, P. J.—This appeal from a declaratory judgment comes to us by way of an agreed statement pursuant to rule 6(a) of the California Rules of Court. The essential facts are not in dispute.

Karl Frederick, Jr. (Frederick), appellant herein, owned a 1960 half-ton pickup truck, which was licensed as a commer-

cial vehicle but which he used for personal purposes. He owned no other vehicle. He testified that the truck "was used . . . solely to drive to and from work, for camping trips and to carry [his] skindiving equipment." The truck was not used in his work.

On August 26, 1961, Frederick, being an occupant, permitted Paul C. Edwards III (Edwards) to drive the truck. Frederick and Edwards were injured when Edwards drove the truck off the road into an embankment.

Frederick was the named insured under a public liability automobile insurance policy covering the truck. The policy had been issued to him by Farmers Insurance Exchange (Farmers). Edwards' father had a policy covering Edwards' liability substantially similar to the Farmers policy issued by Factory Mutual Liability Insurance Company of America, (Factory Mutual). This latter policy was limited in coverage to a "private passenger automobile." Both companies had denied liability to Frederick or Edwards.

Farmers brought this action for declaratory relief against Frederick and Edwards seeking a judicial determination of its responsibilities under its policy. Frederick cross-complained against both companies and Edwards, seeking a declaration of coverage as to him under both policies. Edwards cross-complained against both companies and Frederick for the same purpose. Judgment went against both on their respective cross-complaints. Edwards does not appeal.

On the Frederick cross-complaint the judgment was in favor of Farmers against Frederick on the Farmers policy on the theory that he was specifically excluded from coverage as a "named insured." The trial court also held that the Factory Mutual coverage for an uninsured motorist did not include Frederick because its policy covered only a "private passenger automobile" and that the truck here involved did not come within that definition.

This appeal is by Frederick.

 We treat first the Farmers policy. In part I thereof under coverages A and B, Farmers contracted liability insurance for "(A) Bodily Injury Liability, . . . which the insured becomes legally obliged to pay because of (A) bodily injury to *any* person, . . . arising out of the ownership . . ." with respect to the described vehicle and in the same part 1 proceeds as follows under caption of "Definition of 'Named Insured' and 'Insured'. . . .

"(1) If the *insured* named in Item 1 of the [policy] is an

individual, the term 'named insured' includes his spouse if a resident of the same household;

"(2) The unqualified word *'insured'* includes . . . . the named insured and his relatives, (b) with respect to the described automobile, any other person . . . , provided the actual use of the automobile is by the named insured or with his permission, . . . ;

"(3) The term 'the *insured'* is used severally and not collectively, but the inclusion herein of more than one insured shall not increase the limits of the Exchange's liability.''

Under the caption ''Exclusions'' in paragraph II of said exclusions, the policy reads:

''This policy does not apply under part 1:

''11. To bodily injury to the *insured* or any member of the family of the insured residing in the same household as the insured.'' (Italics added.)

It need hardly be added that thereafter in approximately 11 closely printed pages of the policy the word ''insured'' is used many times. However, in portions of various contextual subject matter, the word ''insured'' is departed from and the designation ''named insured'' is used. Thus, in the paragraph on ''Assignment'' policy reference is to the legal representative of the ''named insured.'' Under paragraph on ''Cancellation,'' reference is ''This policy may be cancelled by the named insured. . . .''

The use and repeated use of the word ''insured'' in the Farmers policy demonstrates that it is used as a word of art. It has an artificially definite contractual meaning which is of considerable convenience to the drafting and reading of the insurance contract.

■ We start with the assumption that any interpretation of the Farmers policy is governed by the settled rule that where there are two possible constructions of an insurance policy, the one more favorable to the insured should be adopted. (*Continental Casualty Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, at p. 437 [296 P.2d 801, 57 A.L.R.2d 914]; *Norton* v. *Farmers Automobile Inter-Insurance Exchange*, 40 Cal.App. 2d 556 [105 P.2d 136].)

In respect of its liability to Frederick, Farmers argues that Frederick, the named insured, is by definition an ''insured'' within the meaning of the exclusion ''. . . bodily injury to the insured or any member of the family of the insured . . . ,'' and as such he cannot, even though he is an injured claimant,

sue himself and seek damages under the policy. If Frederick were driving, no one could quarrel with this construction.[1]

Frederick's position is that a proper construction of the exclusion clause read in the full context of the insurance contract, with settled rules of construction in mind, and considered in the light of the settled public policy of this state (see *Atlantic Nat. Ins. Co.* v. *Armstrong,* 65 Cal.2d 100 [52 Cal.Rptr. 569, 416 P.2d 801]) impels the conclusion that ". . . the unqualified word insured . . ." in the policy does by definition refer to the *person who actually drives* the vehicle, whether such driver be the named insured or some other who drives with the permission of the named insured. Thus, the exclusion quoted does not prevent the named insured from a recovery for bodily injuries suffered as a consequence of negligent operation when someone other than the named insured is properly driving his vehicle.

Frederick argues that Edwards, who was driving his truck, was the insured and that any injuries Frederick suffered as the result of negligent operation of his truck by Edwards, who drove it with his permission, must be compensated for under the policy.

It is clear, we think, without any ambiguity, that when Frederick purchased the policy, and Farmers issued and sold it to him, that both parties contracted not only that it would insure Frederick against public liability, but that it would in addition insure anyone who drove the vehicle with Frederick's permission. Frederick therefore is not suing himself. He is suing Edwards, a third person, for whom he also contracted and for whose liability Farmers agreed to become responsible.

Farmers' claim of exclusion has a complexion of plausibility because Frederick was an occupant of the truck at the time of the accident. It is not suggested that Frederick was in control of the truck directly or indirectly. However, if Frederick or

[1]The case at bench involves only a question of policy construction. We are not confronted with any question which might be raised under section 17158 of the Vehicle Code, to wit:

"§ 17158. LIABILITY TO 'GUEST'. *No person riding in or occupying a vehicle owned by him and driven by another person with his permission and* no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest, during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

his spouse or both were negligently hit by their insured truck, which was being driven by Edwards with their permission, while either or both were walking through a pedestrian zone in another part of town, any semblance of plausibility would vanish. (See *Armstrong, supra.*)[2]

■ If Farmers intended to exclude Frederick or his spouse by contract from claiming benefits to which any member of the public is automatically entitled, then it seems to us that its policy must do more than use a word of art such as "insured," which, when read in the context of the whole policy, has an ambiguous application to the facts at bench and to many other situations which can be posed. The exclusion at bench, assuming that public policy is not involved,[3] might

---

[2]We concede the logic of the dissent that a liability policy such as at bench is not a "Health and Accident" policy. "[I]t does not provide compensation for injuries, per se, but merely provides indemnity coverage for [others] . . . [and that] . . . no legislative act would be required to demonstrate that no recovery under such conditions would be possible." We agree with the statement: "If the limitation provided in section 16454 means anything, it means that a motor vehicle liability policy need not cover any third person's liability for injury to the named insured" on the assumption the insured means the driver.

Arguendo, we concede too, (though it is not settled), that section 16454 may extend beyond workmen's compensation cases, and that if exclusions in the policy at bench were limited to a named insured and/or his relatives while riding in their insured vehicle which is being operated with the permission of the named insured, such limited exclusions may be consistent with public policy.

[3]The public policy of this state, as codified by section 16451 of the Vehicle Code, is that a policy of public liability insurance covering any vehicle shall insure not only the owner but also ". . . any other person . . . using any described motor vehicle with the express or implied permission of said assured." (Section 16451, Veh. Code.)

We do not decide that it is against public policy for an insurance company to clearly exclude a named insured or members of his family from recovering for injuries suffered by the negligent operation of the vehicle owned by such named insured, but lawfully driven by another. We hold only that if such exclusion is intended, the contract must be without ambiguity. Thus, in the recent case of *Travelers Indemnity Co.* v. *Colonial Ins. Co.*, 242 Cal.App.2d 227 [51 Cal.Rptr. 724], it was held that a named insured who was injured on his truck while engaged in a joint operation with a forklift truck, could not recover from his insurer and that the specific exclusion which prevented such recovery, was not against public policy. In *Travelers, supra,* one David Ross rented a forklift truck from Converse Trucking Service (Converse) to use in demolition work. David had a comprehensive liability policy issued by Travelers. Converse, owner of the forklift truck, had an occupational comprehensive liability and a comprehensive automobile damage policy from Transport.

David hired one Jasper Payne to operate the forklift truck, which, insofar as pertinent here, consisted of lifting steel beams and depositing them on a separate truck, owned by Ralph Ross. In the course of this process, Payne so negligently loaded one of the steel beams, as to cause it to fall upon the truck owned by Ralph Ross, as a consequence of which

have reached appellant if its language were as specific as it is in the policy construed in the case of *Armstrong, supra.*

In our opinion, if Farmers, by the exclusion meant to include within its operative effect injuries to the named insured even though some other insured was driving, the language of the exclusion must be such as to leave no doubt that the definition of "insured" is not merely for contractual convenience, but that the named insured can never recover under the policy, or recover only in certain situations, irrespective of who drives. The exclusion at bench is not that certain.

We note too that the policy, following section 16451 of the Vehicle Code, contracts to insure against ". . . bodily injury to *any* person. . . ." (Italics added.) This language is analyzed at length in *Bachman* v. *Independence Indem. Co.,* 214 Cal. 529 [6 P.2d 943] and in *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.,* 221 Cal.App.2d 150 [34 Cal.Rptr. 406]. In *Norwich,* the court discussing said phrase in respect of whether a named insured is covered by the phrase "bodily injury to any person," says at page 152:

"The question has not been determined in California. One case (*Bachman* v. *Independence Indem. Co.,* 214 Cal. 529 [6 P.2d 943]) holds that similar policy language indemnifies the

---

Ralph suffered personal injuries. Ralph had a commercial vehicle policy covering his truck with Colonial. Ralph brought an action for damages and named as defendants therein David (insured, as noted above, by Travelers) and his employee Payne.

In *Travelers,* the exclusionary clause construed was ". . . (1) COVERAGE A—Bodily Injury or Death suffered by any person or persons, *other than the insured or his employees,* as the result of an accident occurring while this policy is in force; . . .' (Italics added.)"

The court in *Travelers* at page 234 said:

"Did the italicized portion of the above provision effectively exclude from coverage under Colonial's policy a claim made by Ralph Ross, its named insured (Insured), as distinguished for example from a claim made by a third person? We believe it did. Section 415 subdivision (e) (now § 16454) as in effect at the time of the accident provided: 'Any liability policy issued hereunder *need not cover any liability for injury to the assured* or any liability of the assured assumed by or imposed upon said assured under any workmen's compensation law . . .' (Italics added.) Thus the above exclusion from coverage was not violative of any public policy; indeed it was expressly sanctioned by the very section which required coverage for permissive users."

In *Armstrong, supra,* the policy in question specifically said "This policy does not apply to: (B) any liability of the renter or driver . . . with respect to bodily injury to . . . or death of . . . (2) any person sustained while riding in, alighting from or getting into or upon any of the automobiles insured hereunder." In the case at bench the policy does not specifically exclude the named insured who would be comparable to the "renter" in *Armstrong,* while "riding in" the truck. The situation at bench is therefore stronger than *Armstrong.*

additional insured against wrongful death claim by heirs of the named insured. But it expressly leaves open the question whether a like result would follow if the named insured were himself seeking damages for injuries.

"Norwich argues that its policy, viewed as a whole, should not be construed to require it to pay or to defend against claims of the named insured arising from his own injuries. It points to conflicts which could arise under the cooperation clause if the coverage be so broad, and argues that the purpose of the policy is to indemnify against liability, rather than to insure against injury.

"But the policy on its face undertakes to indemnify either the named or the additional insured against liability for bodily injury 'sustained by any person.' To construe this as meaning 'any person except the named insured' would be to rewrite the policy. Other jurisdictions have uniformly held comparable policy language to cover claims of the named insured against the additional insured [citing cases]." (See *Armstrong, supra.*)

We recognize that in *Bachman* and in *Norwich* the court was not called upon, nor did it apply its construction of "any" to a specific situation such as we have at bench. However, our construction does no violence to the clear exclusion in the policy. If Frederick had been driving and Edwards had been the passenger, Edwards and not Frederick would have the cause of action.

We conclude that the language of the policy at bench excludes only the one who actually drives the insured vehicle and the resident members of his family. This construction is fortified by *Armstrong, supra,* and *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.* (1962) 201 Cal.App.2d 9 [20 Cal.Rptr. 73]. In the latter case property damage instead of bodily injury was involved. The court held the permissive driver to be the insured rather than the owner and allowed the owner to recover for damages to his own vehicle. At pages 18, 19, the court said:

"We do not believe that the provision in the policy excludes liability as to property owned by the named insured necessarily when the automobile is operated by a permissive user. The exclusion reads: 'This policy does not apply: . . . (f) under coverage B, to injury to or destruction of (1) property owned by or rented to the insured. . . .' But, here, Moore, the permissive user, did not own the car. He became an additional assured under the policy by operation of law. Moore damaged

Hacker's car; Moore is liable; the policy protects him because the damaged car was not 'property owned' by him but by Hacker. We construe the policy against the insurer because it ' "prepared the policy" ' [citation]; the 'presumption favors' the insured [citation]. Universal cannot invoke the language of the exclusion, which it limited to the insured's 'owned' property, to embrance property not owned, but borrowed by, an additional insured.''

■ Frederick also appeals the judgment of the court denying liability under the Factory Mutual policy issued to Edwards' father. That policy, as pointed out, insures a ''. . . private passenger automobile.'' It states in part: ''The following are insureds under Part I: . . . (b) with respect to a non-owned automobile, . . . (2) any relative, but only with respect to a private passenger automobile or trailer provided the actual use thereof is with the permission of the owner.''

The sole question on this portion of the appeal is whether Frederick's one-half-ton pickup truck was a private passenger automobile within the meaning of the policy. The policy defines ''private passenger automobile'' as follows:

'' '[P]rivate passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile; . . . 'utility automobile' means an automobile other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes.''

On the admitted facts it would appear that the pickup truck here involved was a utility vehicle.

Frederick contends, however, that the actual use of the vehicle, as well as its construction, is the test, citing *Poncino* v. *Sierra Nevada Life & Casualty Co.,* 104 Cal.App. 671, 674-675 [286 P. 729]. The vehicle involved had a commercial license. The court in *Poncino* discusses the interpretation of the insurance clause ''private passenger motor-driven car'' and says ''the manner in which a vehicle is used, as well as its construction, is an important factor in determining its character, . . .'' (*Id.* p. 674.) The court's quoted statement was in respect of the validity of instructions to the jury which required the jury to determine the character of the vehicle. The question, therefore, was one of fact, not one of law for the court. This conclusion is supported by *Gaumnitz* v. *Indemnity Ins. Co. of North America,* 2 Cal.App.2d 134 [37 P.2d 712], wherein the court allowed the jury to determine on the basis of expert evidence whether a particular vehicle was an ''automobile truck'' within the meaning of the policy. The vehicle

involved was a Ford pickup truck. The type of license is not disclosed by the opinion. *Mattson* v. *Maryland Casualty Co.,* 100 Cal.App. 96 [279 P. 1045] (hearing denied) poses a situation similar to the one at bench. ''Automobile truck'' was specifically excluded from an insurance policy. The vehicle consisted of a Model T chassis upon which was constructed a rectangular body. It was used among other things for delivery and it had a commercial license, but it was also used for personal purposes. The defense was that plaintiff was driving an automobile truck.

This case is before us, as pointed out in the beginning, on an agreed statement. Attached to the statement as Exhibit C is a transcript of the evidence taken as to the manner in which the truck was used and a stipulation that it had a commercial license.

Thus, there was before the trial court a definite question of fact. In this age of rubber wheels, in which autos of all description, irrespective of age or type, are used by the mass of the population, it is probable that many so-called trucks, even though they have a commercial license, are exploited solely for personal transportation by large segments of the working population, because they are within economic reach. It is probable too for similar reasons, that passenger vehicles with passenger licenses may be used for commercial purposes. However, since there is no specific finding on this facet of the case, we must assume, since there is a conflict and the judgment was in favor of Factory Mutual, that the trier of fact found that the vehicle in question was what it looked like, and what it was licensed for, to wit: a pickup truck and not a ''private passenger automobile.''

The judgment is reversed as to Farmers and affirmed as to Factory Mutual.

Fleming, J., concurred.

HERNDON, J.—I concur in the affirmance of the judgment as to Factory Mutual but I disagree with the opinion of the majority with respect to the liability of respondent Farmers Insurance Exchange under its contract of insurance with appellant Frederick, the named insured. The judgment of the trial court should be affirmed in my opinion because it correctly decides that appellant is validly and effectively excluded from indemnity coverage for his own personal injuries.

*Statement of Issues*

The determinative questions presented by this appeal with respect to respondent Farmers are clear-cut and may be stated and answered very simply:

*First,* does the law of California permit an insurance carrier to exclude liability to the insured for his own bodily injuries from the coverage of a policy of automobile insurance? Yes, section 16454 of the Vehicle Code expressly authorizes this specific exclusion and California precedents are consistent with the decisions of other jurisdictions which uniformly recognize the validity and effectiveness of policy provisions limiting coverage to this extent.

*Secondly,* does the insurance contract here involved effectively invoke this legally permissible limitation upon the extent of its coverage? Yes, it plainly provides in simple language that "This policy does not apply . . . to bodily injury to the insured."

In Part I of the contract under the heading *"Exclusions Under Part I,"* the following provision appears: "This policy does not apply . . . to bodily injury to the insured . . ." Appellant contends (1) that this exclusionary provision does not apply in this case because Edwards, the driver, is an additional insured under the policy and entitled to its protection; and (2) that the exclusion is contrary to public policy and "is invalid and void under Vehicle Code section 16451."

Although the majority opinion expressly refrains from deciding that such an exclusionary provision is invalid if expressed with sufficient clarity, I deem it appropriate to indicate the reasons for my conclusion that appellant's contentions in this regard are untenable.

### CALIFORNIA LAW PROVIDES THAT A MOTOR VEHICLE POLICY NEED NOT COVER ANY LIABILITY FOR INJURY TO THE INSURED.

As noted in *Atlantic Nat. Ins. Co.* v. *Armstrong,* 65 Cal.2d 100, 107 [52 Cal.Rptr. 569, 416 P.2d 801], former Vehicle Code section 415, now Vehicle Code sections 16450 et seq., defined not only the persons who must be covered by every motor vehicle liability policy issued in this state, but also the risks which must be covered. "Thus interpreted, the section appears to prohibit insurance policies from excluding liability to a person who is injured by the negligence of an insured driver unless such an exclusion is permitted by some other provision of law. [Citing Vehicle Code section 16454.]" That is to say, liability to an injured person may be excluded only

to the extent permitted by law but *to that extent* such exclusion does *not* constitute a violation of public policy.

As originally added by Statutes 1929, chapter 259, section 2, page 564, the predecessor section of present section 16454 provided for only two permissible exclusions, i.e., the carrier was not required to insure (1) against liability for injuries to persons whose injuries were covered by any workmen's compensation law, and (2) against liability for damage to property of others where the property was in charge of the insured or the insured's employees.[1]

These two permissible exclusions were retained in all later amendments to the section and in 1937 an *additional* exclusion relating to *"injury to the assured"* was expressly authorized. (Stats. 1937, ch. 840, § 5, p. 2356.) To me the conclusion is unavoidable that this additional statutory provision was designed and intended to permit contractual exclusion of the named insured from coverage for his own injuries resulting from the operation of the described vehicle whether by himself or by another with his permission.

Section 16454, effective at all times material to this case, provides: "Any motor vehicle liability policy need not cover any liability for injury to the assured or any liability of the assured assumed by or imposed upon the assured under any workmen's compensation law nor any liability for damage to property in charge of the assured or the assured's employees or agents."

It is to be noted that the sections immediately preceding section 16454 clearly indicate that by "the assured" the Legislature definitely had in mind the person to whom the policy is issued rather than someone who might become an additional insured by reason of using a vehicle owned by the

[1] " 'Motor vehicle liability policy,' as used in this act, shall be taken to mean a policy of liability insurance issued, by an insurance carrier authorized to transact business in this state, to the person therein named as insured, which policy shall designate, by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is intended to be granted by said policy, and shall insure the insured named therein, and any other person using or responsible for the use of any such motor vehicle, with the consent, express or implied, of such insured, against loss from the liability imposed upon such insured by law or upon such other person for injury to, or death of, any person, *other than such person or persons as may be covered, as respects such injury or death by any workmen's compensation law,* or damage to property, except property of others in charge of the insured or the insured's employees growing out of the maintenance, use or operation of any such motor vehicle in the United States of America; . . ." (Italics added.)

assured with the latter's permission. Thus, section 16450 at the time of the accident here involved provided:

"A 'motor vehicle liability policy,' as used in Chapters 2, 3, and 4 of this Division, means an owner's policy or an operator's policy or both, of liability insurance, certified as provided in Section 16431 as proof of ability to respond in damages, issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the *person named therein as assured.*" (Italics added.) Similarly section 16451 provided:

"An owner's policy of liability insurance shall . . . (b) Insure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission *of said assured,* . . ." (Italics added.)

Although it might appear too fundamental to require express observation, it is important to remember that by definition a "liability policy" is not a "health and accident policy," i.e., it does not provide compensation for injuries, per se, but merely provides indemnity coverage for persons who have become liable for injuries to others. In the abstract many persons may be potential "insureds" under a liability policy but in practice "the insured" will be the person or persons against whom liability is being asserted in any given instance. For example, the owner of an automobile holding an owner's policy of liability insurance is always "the insured" when he is operating the automobile himself, or when his agent or employee is operating it, or when liability is being asserted against him under section 17150[2] by reason of the operation of the automobile by another with his permission. On the other hand, the owner's agents or third parties to whom he may give permission to operate the vehicle will be "insureds" only when liability is being asserted against them as the result of their own actual operation of the vehicle.

To contend that the Legislature intended by section 16454 to provide only that a motor vehicle liability policy need not cover any *liability* of any insured for injuries he inflicted on himself is to impute to this body the desire to guard against the impossible. If the party injured is also "the insured," in the sense that his is the liability which is being asserted and to

---

[2]Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

which the carrier is being asked to respond, no legislative act would be required to demonstrate that no recovery under such conditions would be possible. If the limitation provided in section 16454 means anything, it means that a motor vehicle liability policy need not cover any third person's liability for injury to the named insured. It certainly does not mean that the policy need not cover the named insured's liability to himself for his own injuries or the liability of a permissive user to himself for his own injuries.

Recognizing this fact, appellant herein does not contend that such an interpretation may be given to section 16454 but rather argues that the additional provision added by the 1937 amendment did not actually change the prior act and should be considered merely as a meaningless and ungrammatical extension of the previously authorized exclusion relating to liability for injuries covered by the workmen's compensation law. That is, appellant contends that when section 16454 speaks of ''injury to the *assured*,'' it means injuries covered by the workmen's compensation law.

In my view, for the reasons heretofore discussed, such construction is logically impossible since the workmen's compensation law, like a policy of liability insurance, covers only the liability of an ''*insured*'' for injuries sustained by others, not by himself. In addition, the clause in section 16454 providing that a motor vehicle liability policy need not cover ''any liability *of the assured assumed by or imposed upon the assured* under any workmen's compensation law'' is in itself sufficient to fully and intelligibly cover this limitation.

Appellant argues that the editorial caption ''Workmen's Compensation'' preceding the legislative language of section 16454 requires that the provisions of that section be construed as limited to the subject matter indicated by the caption.

This argument is fallacious for two reasons: First, the suggested construction is grammatically and logically impossible. Manifestly the provision of section 16454 relating to ''liability for damage to property in charge of the assured or the assured's employees or agents'' has nothing whatever to do with the workmen's compensation law. Secondly, the caption is not a part of the legislative enactment. (See Stats. 1937, ch. 840, p. 2356.) As stated in paragraph 5 of the preface to volume 66 of West's California Codes, ''The Code as enacted by the Legislature did not contain section headings.''

On the question of public policy and the proper interpretation of section 16454, the following language used in the

recent case of *Travelers Indem. Co.* v. *Colonial Ins. Co.,* 242 Cal.App.2d 227, 234 [51 Cal.Rptr. 724], is equally apposite here:

"Section 415 subdivision (e) (now § 16454) as in effect at the time of the accident provided: 'Any liability policy issued hereunder *need not cover any liability for injury to the assured* or any liability of the assured assumed by or imposed upon said assured under any workmen's compensation law. . . .' (Italics added.) Thus the above exclusion from coverage was not violative of any public policy; indeed it was expressly sanctioned by the very section which required coverage for permissive users. Absent any statute or public policy prohibiting them, provisions of an automobile liability policy excluding from coverage liability for bodily injury or death of a named insured have been held valid and effective and have been enforced according to their terms. [Citations.]"

In the *Travelers Indem. Co.* decision, the court was required to determine whether Colonial Insurance Company was obligated to defend and indemnify David Ross and Jasper Payne, permissive users of the vehicle in question, in an action brought against them by Ralph Ross, the named insured, for personal injuries sustained by their alleged negligent use of the vehicle. The exclusionary words in Colonial's policy were found in their agreement to indemnify the insured from claims against him "if such claims are made on account of (1) COVERAGE *A*—Bodily Injury or Death suffered by *any* person or persons, *other than the insured or his employees,* as the result of an accident occurring while this policy is in force; . . ." (Italics added in part.) The court in *Travelers Indem. Co.* disposed of this question in the following manner (p. 235):

"We reject as unmeritorious Travelers' arguments that the exclusionary provision is without effect. These are advanced in the alternative from the factual basis that Ralph Ross is the Insured named in the declarations of Colonial's policy and that, as already noted in the policy's insuring agreements, Colonial agrees to indemnify the Insured named in the declarations 'and herein called the insured' against the loss thereafter indicated. Travelers argues that the policy repeatedly distinguishes between 'named insured' and 'insured' and that whether the terms are considered as interchangeable or totally distinct in either event the exclusionary provision does not apply. The argument may be summarized thusly: First, if the policy does distinguish between 'named insured' and 'insured,' the exclusion is inoperative because had Colonial

intended to exclude coverage for Ralph Ross' injuries it should have used the language 'other than the *named* insured' (italics added) and failing to do so intended to exclude coverage only for injuries of 'insured' (e.g., David Ross and Payne). Secondly, if the two terms are used interchangeably, then Colonial intended its policy to cover Ralph Ross' liability in the first place, that the exclusion was operative only where Ralph was liable and that it was not intended to apply where an additional insured 'might come into the picture by operation of law.' The arguments are completely specious and lead to absurd results. An examination of the insuring agreement set forth above satisfies us that Ralph was always in fact the named insured under the policy and that the italicized language of exclusion refers to *his* claims for injuries.

"We are of the opinion that the policy excluded from coverage claims by its named insured Ralph Ross. In view of this conclusion we need not discuss the issue raised by Travelers as to whether Colonial's coverage was primary or excess."

By the same process of reasoning, I am convinced that the policy here under consideration clearly manifests the same intent to exclude recovery by the named insured for his own personal injuries as expressly permitted by section 16454 of the Vehicle Code.

A similar result was reached in *Rollo* v. *California State Automobile Assn.*, 159 Cal.App.2d 172 [323 P.2d 531], which dealt with that portion of section 16454 permitting a limitation in instances where the injuries involved were compensable under the workmen's compensation law. Rollo and one Vanelli were coemployees of the Broadway Plumbing Company. Rollo was injured while a passenger in a car owned by Broadway and being driven by Vanelli. Rollo obtained a judgment against Vanelli and thereafter sought to enforce it against the insurance company that had issued a motor vehicle liability policy to Broadway covering the automobile driven by Vanelli. Rollo argued that since Vanelli was an additional insured under the policy, and was not Rollo's employer, the exception regarding injuries covered by the workmen's compensation law should not apply. Such contention was rejected. The court held that under the omnibus clause in the policy, Vanelli was an additional insured as to the whole world, except that there was excepted from the whole world an injured fellow employee injured by Vanelli when both were acting in the course of their employment with the named insured, and such exception

was not violative of the spirit or intent of the financial responsibility laws.

In the case at bench, it may be conceded that Edwards, as operator of the vehicle involved in the accident, is an additional insured whose liability for injuries to everyone except the named insured, is covered by the policy in question, but the indicated exception is expressly permitted by section 16454 and therefore is not violative of the spirit or intent of the financial responsibility laws.

The decision in *Atlantic Nat. Ins. Co.* v. *Armstrong, supra,* 65 Cal.2d 100, does not undertake to determine the proper construction to be given to section 16454. It was sufficient to the determination of the issue there presented to hold that a general provision designed to exclude coverage of liability for injuries to the *occupants* of the car was void and could not be construed as limited to the permissible exclusion of the named insured in the fortuitous event that he happened to be an occupant.[3] In the instant case "the insured" is expressly excluded whether injured in or out of the car and, as we have shown, the provision can have no possible relevant meaning other than that it is restricted to the named insured.

I am in full sympathy with judicially enunciated rules of public policy which favor the extension of monetary protection to persons who are injured in automobile accidents through no fault of their own. This is quite appropriate when the right to such protection is reasonably grounded. In the present case, however, the Legislature has declared the applicable rule of public policy in such clear language that our failure faithfully to apply it would be impermissible for obvious reasons. As stated in *Wisdom* v. *Eagle Star Ins. Co.,* 211 Cal.App.2d 602, 605 [27 Cal.Rptr. 599] :

"We recognize that the purpose of financial responsibility laws is to give monetary protection to the persons lawfully using the highways, and that they are to be construed liberally. [Citations.] This proposition, however, does not vitiate the elementary principle that the judicial function is simply to ascertain and declare what is in terms or in substance con-

---

[3]The quotation from the policy in the *Armstrong* case contained in footnote 3 of the majority opinion does not appear in the Supreme Court's decision. However, assuming that it is accurate and that the Supreme Court relied thereon, the exclusion there made was merely that the policy did not provide coverage for the *liability* of the renter or driver for injuries sustained by occupants. As indicated, as a general exclusion it was void and as to the renter himself no liability could attach against him for his own injuries.

tained in the statute, not to insert what has been omitted, or omit what has been inserted.''

It appears that contractual limitations upon coverage of the precise species here involved have been held valid and effective by numerous decisions from various states of the union. The following statement is found in volume 7 of Appleman, Insurance Law and Practice, section 4409:

''The results reached by the courts in situations where the named insured is injured by the negligence of a person operating the insured automobile, such operator claiming protection under the omnibus clause, must be considered with reference to the policy provisions themselves. In many policies which have been issued, a direct policy exception prohibits recovery for injury or death of a named insured, and where such an exclusion is contained in the policy, it is enforced according to its terms.''

Appleman cites in support of the foregoing text decisions from the states of Georgia, Illinois, Louisiana, Missouri, Minnesota, Wisconsin, New York, Virginia and the District of Columbia. In addition, other cases not cited in Appleman upholding this type of exclusion are: *Munsert* v. *Farmers Mut. Automobile Ins. Co.* (1938) 229 Wis. 581 [281 N.W. 671]; *Perkins* v. *Perkins* (Mo.App. 1955) 284 S.W.2d 603; and *Havlik* v. *Bittner* (1956) 272 Wis. 71 [74 N.W.2d 798].

### The Contract Here Involved Clearly Expresses the Intent to Exclude Coverage for Injuries Suffered by the Insured.

Turning now to the proper interpretation of the insurance policy issued by Farmers in the instant case, I agree with the majority's conclusion that the word ''insured'' as used in the policy is a word of art and one that has a definite contractual meaning. However, for this very reason I would give it the meaning expressly specified in the contract rather than another meaning not to be found therein. The policy explicitly states that the unqualified word ''insured'' may identify either the named insured, a permissive user or any person legally responsible for the use of the nonowned automobile by the named insured.

It should be noted that the language of the exclusionary provision here involved utilizes essentially the same terminology as is found in section 16454, i.e., ''Any motor vehicle liability policy need not cover any liability for injury to the assured. . . .'' Secondly, it must be borne in mind, as previously discussed, that no exclusion under a *liability policy* is

required to prevent a person from seeking to establish his own liability for his own injuries. Such an effort would constitute a contradiction in terms and would need no assistance from the policy to ensure its failure.

The majority opinion determines that the "insured" in this expression means "the driver" and that the exclusion is intended to guarantee that the carrier shall not be required to indemnify the driver for his own liability to himself arising from his own injuries. I fail to apprehend why such an utterly needless exclusion would be placed in the policy. To my mind it is clear that this exclusion was intended to utilize the limitation expressly authorized by section 16454 and to exclude from coverage any liability of the driver for injuries sustained by the named insured.

I can conceive of no instance in which such an exclusionary provision would be required to prevent an additional insured from seeking indemnity for his own liability for his own injuries. Neither can I imagine a situation in which an exclusion would be required to prevent a named insured from seeking indemnity for his own liability for injuries sustained while he personally was operating his automobile. It seems unquestionable to me that this exclusion is designed to cover the only situation in which it would be relevant, i.e., where the named insured is seeking to establish the liability of an additional insured for injuries sustained by the named insured by reason of the additional insured's negligent operation of the vehicle.

### THE FACTORY MUTUAL POLICY DOES NOT EXTEND COVERAGE TO THE TYPE OF VEHICLE HERE INVOLVED.

I concur in the judgment in favor of Factory Mutual, not because there was substantial conflicting evidence on the question whether the pickup truck was or was not a commercial vehicle, but because the definitions contained in the policy in question clearly indicate that such a vehicle is not included within the policy's definition of "private passenger vehicle" regardless of its use. Immediately following the provisions in the policy limiting the persons insured thereunder with respect to a nonowned automobile to " (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer," these clear definitions are set forth:

" '[P]rivate passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile; . . . 'utility automobile' means an automobile other than a

farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes.''

Since the policy clearly placed the vehicle involved in the instant action in the separate classification of ''utility vehicle'' and since this class of vehicles was *not* included in the coverage extended to relatives of the named insured when using nonowned cars, I agree that such coverage may not be extended by any abstract judicial determination of what type vehicle *might be* included within the definition of ''private passenger vehicle'' when the policy itself does not speak definitively on the subject.

The petition of the plaintiff, cross-defendant and respondent for a hearing by the Supreme Court was denied November 30, 1966.