[No. C000702. Third Dist. July 20, 1987.]

NATIONAL AUTOMOBILE and CASUALTY INSURANCE COMPANY, Plaintiff and Appellant, v. JAMIE CONTRERAS, Defendant and Respondent.

**COUNSEL**

Goorjian & McCabe and J. Frank McCabe for Plaintiff and Appellant.

John A. Young for Defendant and Respondent.

OPINION

**BLEASE, Acting P. J.**—This is an appeal from a judgment declaring that a policy of automobile insurance, issued by plaintiff National Automobile and Casualty Insurance Company (National), covers the use of a borrowed pickup truck driven by defendant, Jamie Contreras (Contreras), a relative of the named insured. At issue is whether the truck is a "private passenger automobile," as that phrase is used in the provisions of the policy applying to nonowned automobiles. We conclude that it is not. We shall reverse the judgment.

FACTS

The facts are simple and not in dispute. In January 1982, National issued an automobile liability policy to Evelyn Souza, the named insured, listing a 1976 Mercury automobile as an "owned automobile." The defendant, Jamie Contreras, is Souza's daughter and resides with her and is therefore a "relative" as used in the policy.[1]

On March 21, 1982, Contreras was driving a 1979 Chevrolet Luv pickup truck, owned by Michael Sullivan, when she struck a telephone pole. Contreras's passenger, Deborah Ann Carpenter, was injured and brought suit against her. Contreras tendered the defense to National which accepted under a reservation of rights.

National commenced this declaratory relief action to determine whether the truck is a "private passenger automobile" within the provision of its policy which insures the use of a nonowned automobile by a relative of the named insured, "but *only* with respect to a private passenger automobile . . . ." (Italics added.) It is agreed that the Sullivan truck comes within the separate policy definition of "utility automobile."

The trial court said that "on its face the policy, which is unambiguous would appear to exclude coverage for this accident." However, viewing *Farmers Ins. Exch.* v. *Frederick* (1966) 244 Cal.App.2d 776 [53 Cal.Rptr. 457] as controlling, the court stated: "we must look to the use of the vehicle and not just its description and base our decision on the facts showing use among other things. In this case, the evidence was the Sullivan vehicle was

---

[1] As pertinent here, a " 'relative' means a person related to the named insured . . . who is a resident of the same household . . . ."

used exclusively for passenger use." Applying that test, the court held that the truck "was primarily a private passenger vehicle and not a utility vehicle and therefore there was coverage for defendant Contreras." A judgment was entered accordingly. This appeal followed.

## DISCUSSION

### I

■ The policy insures the use of a nonowned automobile by a relative of the named insured *only* if it is a "private passenger automobile." The policy distinguishes. that term from "utility automobile" by separate definition. It is agreed by the parties that the Sullivan pickup truck, as a light truck (under 1500 pounds capacity), is a "utility automobile," as defined by the policy. Thus coverage is provided Contreras's use of the Sullivan truck only if "private passenger automobile" is (in relevant part) inclusive of "utility automobile." Contreras claims that is the case when, as here, the truck is exclusively used for carrying passengers. We disagree.

■ Contreras seeks to employ a familiar rule of insurance contract construction, that if the material terms of the policy are ambiguous they must be construed in favor of coverage if semantically permissible. (*White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P2d 309], quoting from *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764]; see also *Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089]; *Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 55 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518]; *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168].) ■ An ambiguity arises only when there is an "uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 177 Cal.App.3d 855, 859 [223 Cal.Rptr. 246]; fn. omitted.) Thus, before applying a rule to resolve an ambiguity, it first must be determined that there is such an uncertainty.

■ Courts are not at liberty to rewrite an insurance contract, i.e., to apply its language to circumstances which are not within its terms. (*Pacific Employers Ins. Co.* v. *Maryland Casualty* (1966) 65 Cal.2d 318, 323 [54 Cal.Rptr. 385, 419 P.2d 641], overruled on other grounds in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d

841].) That does not occur when a court is called upon to resolve a question of meaning, for the meaning must be ascertained in order to know whether it is being altered. ■ The question of meaning is framed by the competing claims of the parties regarding the application of the policy language to the material facts of the case. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra,* 177 Cal.App.3d at pp. 858-859 and cases cited therein.)

These claims must then be tested against the permissible uses of the language upon which the claims are founded, for the meaning of language is to be found in its usage and the occasion of a usage is an application of the language to particular circumstances. (Cf. *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra,* 177 Cal.App.3d at p. 859, fn. 1; see *Southern Pacific Transportation Co.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 956 [237 Cal.Rptr. 191].) It is the semantic permissibility of the disputed applications which is the measure of the inquiry into meaning.

■ In determining the semantic permissibility of an application of the language of a policy of automobile insurance, "[w]e must read [the policy] as employing the ordinary usages of its terms as they might be understood by the layman in the context of the policy and the purposes which it serves." (*Travelers Indemnity Co.* v. *Swearinger* (1985) 169 Cal.App.3d 779, 784 [214 Cal.Rptr. 383]; *California State Auto Assn. Inter-Ins. Bureau, supra,* 177 Cal.App.3d at p. 859; see *Reserve Insurance Co.* v. *Pisciotta, supra,* 30 Cal.3d at p. 807.) Clarity, indeed explicitness, of the language of coverage is a requirement of the Insurance Code. (See e.g., Ins. Code, § 11580.1, subds. (b)(2) and (3).) That is because the policy of insurance must be intelligible to the persons to whom it is sold. Where such persons are laymen, the level of intelligibility must be so gauged and in this sense the language used must be ordinary language. That does not preclude the explicit definition of policy terms (even in unusual ways), provided that the language of the definition is intelligible and accessible (i.e., so located as to be easily found) to the layman (or audience) to which the policy is sold.

Accordingly, our semantic task is to determine whether there is a material uncertainty in the claimed applications of the terms of the National policy to the material facts of the case, measured by the manner in which they would be "understood by the layman in the context of the policy and the purposes which it serves."

In sum, the question of the meaning of the disputed policy terms must first be resolved in the manner stated. Only if this inquiry reveals a material

uncertainty in their application, of consequence to coverage, are we called upon to resolve the ambiguity in favor of the insured.

## II

■ The policy provides that National will pay on the behalf of the *"insured* all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a non-owned automobile." (Italics added.) The policy links the kind of automobile covered to the definition of "insured."[2]

With respect to an "owned automobile," an "insured" is the named insured and (conditionally) any other person using the vehicle with the owner's permission. An "owned automobile" includes "a private passenger or utility automobile." By contrast, with respect to a "non-owned automobile,"[3] a "relative" of the named insured is an "insured" *"only* with respect to a private passenger automobile . . . ." (Italics added.) This latter term is defined as "a private passenger or station wagon *type* automobile." (Italics added.) The policy separately defines "utility automobile" as "an automobile of the truck *type* with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming." (Italics added.)

The dispositive question is whether a "utility automobile", notwithstanding its separate definition, is also included, in whole or in part, within the term "private passenger automobile." We answer "No."

### A.

■ Throughout the policy, when both "private passenger automobile" and "utility automobile" are jointly meant to be covered, the terms appear together in the disjunctive. Thus the policy specifies that an "owned automobile" includes "a private passenger or utility automobile."[4] By contrast,

---

[2] The policy provides, in pertinent part, that "the following are insureds: (a) with respect to an owned automobile, (1) the named insured, (2) any other person using such automobile with the permission of the named insured, . . . .(b) with respect to a non-owned automobile, (1) the named insured, (2) a relative, but only with respect to a private passenger automobile or utility trailer. . . ." "[A]utomobile" is defined as "a four wheel land motor vehicle designed for use principally upon public roads . . . ."

[3] " '[N]on-owned automobile' means an automobile not owned by or furnished or available for the regular use of either the named insured or any resident of the same household . . . ."

[4] This provision also extends coverage to a "utility trailer." Of significance, a "utility trailer" is defined as "(1) a trailer designed for use with a private passenger automobile," thus defining the trailer by relation to the type of automobile, the type under consideration, by

the policy singles out "private passenger automobile" as the *"only"* non-owned vehicle which is covered when used by a relative of the named insured. This syntax implies that "private passenger automobile" does not include "utility automobile," and that the terms are mutually exclusive. The defendant would have us construe "private passenger automobile" either as excluding a "utility automobile," when applied to an owned automobile (or as a useless addition), or as including such a vehicle when applied to a non-owned automobiie. The difficulty with this reading, requiring contradictory or redundant usages, is that it creates an ambiguity where none exists, violating a simple rule of consistent usage upon which the viability of communication depends. (See *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 358 [139 P.2d 908].)

### B.

■ Nonetheless, Contreras does suggest the possibility that only *some* light trucks, by virtue of the fact that their owners employ them exclusively for the carrying of passengers, might also be viewed as within the definition of "private passenger automobile," thus explaining the policy's separate category for *all* light trucks. This argument rests upon the claim that the transient usage of the vehicle and not any permanent (built-in) characteristic of the vehicle is *a* criterion of classification.

At issue are the criteria by which the policy definitions are to be measured, in particular whether trucks and passenger automobiles are to be defined by comparison with the exemplars to which we ordinarily append the labels, or by the transient uses to which they might be put by an owner.

Contreras's claim is not a novel one. The claim has had a peculiarly checkered history in the case law. (See Annot., What Constitutes "Private Passenger Automobile" in Insurance Policy Provisions Defining Risks Covered or Excepted (1982) 11 A.L.R.4th 475.) We will leapfrog this history because the definitional question is finitely answered by the syntax and definitions of the National policy, which employ ordinary usages of the disputed terms.

At the outset we observe that if the term "private passenger automobile" were not otherwise defined by the policy, such a claim might find support since "automobile" is defined, in a manner similar to its use in the Insurance Code, as any four wheel land motor vehicle designed for use primarily

---

which it would be hauled. The same definition recognizes the distinction between utility and private passenger automobiles by the separate definition of a "utility trailer" as "(2) a farm wagon or farm implement while used with a private passenger or utility automobile."

upon public roads.[5] So employed the argument could be made that the words "private passenger" modify the use to which such a vehicle, so designed, is put.[6]

However, "private passenger automobile" is otherwise defined in the policy. The policy defines the term as "a private passenger or station wagon *type* vehicle." (Italics added.) The modifier, "type," also appears in the definition of "utility automobile" as "an automobile [of limited carrying capacity] of the truck *type*". (Italics added.) The coupling of the word "type" with "station wagon" and "truck" suggests that these terms are to be understood as *samples* (exemplars) of the defined terms, the purpose of which is to invoke our ordinary understandings of the *kinds* ("types") of things to which the terms refer, shown by our ability to point out that a (particular) vehicle is (say) a truck and not a car or station wagon.[7] In defining the terms by reference to such samples the transient usage of the vehicle is ruled out as a general criterion of meaning.

[5]The policy defines "automobile" as a "four wheel land motor vehicle designed for use principally upon public roads." (Cf. Ins. Code, § 11580.06, subd. (d).) The term "automobile" suggests a car, a word which is not ordinarily used to mean truck. However, it is not so used within the policy and the definition is placed within the policy so as to be easily found by the policyholder.

[6]"[P]rivate passenger automobile" is not limited to a car, since a station wagon is explicitly included and "automobile" is defined as a "four wheel land vehicle designed for use principally upon public roads." The term appears expansive enough to encompass a variety of vehicles, such as cars and vans, which are principally *designed* (cf. fn. 8, *infra*) to carry private passengers upon public roads.

[7]What is a simple matter of linguistic practice may not be easily explained. That is because "[t]he members of a given society, even those who are competent and fluent speakers of their language, paradoxically have little formal ability to analyse their own language without instruction." (Burchfield, The English Language (1986) p. 2.) Perhaps, "[o]ur disease is one of wanting to explain." (Wittgenstein, Remarks on the Foundations of Mathematics (rev.ed. 1978) p. 333.) One cure for the disease lies in the recognition that we sometimes define a term, not by an essential property (common to all of its applications) which captures its essence, but ostensively (by showing samples of the term), because that is how we learned its meaning. A sample embodies a concept, and hence a definition of that sampled, because we use it (symbolically) *as* a model or exemplar of the concept and not the thing itself. This could be viewed analogously as a common law of language usage. (See *People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 875, fn. 6 [174 Cal.Rptr. 816].) We ordinarily learn the concepts of cars and trucks in this manner. A difficulty may arise when a hybrid or unusual case is presented which does not conform to the samples by which we acquired our conceptual knowledge. "It is only in normal cases that the use of a word is clearly prescribed; [ ] the more abnormal the case, the more doubtful it becomes what we are to say." (Wittgenstein, Philosophical Investigations (3d ed. 1958) § 142.)

The fact that we define some words in that manner does not necessarily rule out definitional explanations of a descriptive type. The danger is that some singular property might be seized upon as *the* essential characteristic of the word. The semantic antidote requires a more elaborate descriptive apparatus than is generally recognized, one which is aimed at revealing the multiplicity of (sometimes disparate) circumstances to which a word may be applied. What is likely to be discovered by this kind of explanatory effort is the subtlety of our language practices, by which the play of the language is revealed (shown) only within the particular circumstances in which it is used.

Such transient usage is also ruled out by the fact that the policy looks in part to the design and construction of a vehicle as the measure its fitness or capacity for a particular use. (Cf. *Farmers Ins. Group* v. *Koberg* (1982) 129 Cal.App.3d 1033 [181 Cal.Rptr. 494].)[8] The policy does so in the definition of "automobile" and in defining a "utility automobile" inter alia by its "load capacity." Of course, that something has a *capacity* for or is designed for a certain use does not mean that it is put to that use. In recognition of this distinction, the policy specifies transient uses when they are material to coverage. Although a utility automobile is defined as an "automobile of the truck type," coverage is not provided when that *kind* of vehicle is (transiently) "used for business or commercial purposes other than farming." Similarly, a "utility trailer" is defined in part by virtue *of* its use ("while used") with a "private passenger or utility automobile . . . ." (See fn. 4, *ante*.) This unmistakably indicates that "private passenger . . . type automobile" extends only to those "automobiles" designed and constructed for the purpose of conveying passengers and their personal effects, i.e., not those of the "truck type" which are distinguished in ordinary speech by the design characteristics showing utility for hauling cargo.

Accordingly, a pickup truck that is used exclusively for the carrying of passengers does not thereby become a "private passenger automobile" within the meaning of the National policy.

### III

The trial court, as it recognized, went beyond the defined, consistent and ordinary usages of the disputed terms in the policy under the perceived constraint of the *Frederick* case, *supra*. It defined "private passenger automobile," not by reference to our ordinary understandings of the *kinds* ("types") of vehicles which answer to that language, but by the unusual measure of the use to which the vehicle is actually put by the owner.

---

[8] The point of an inquiry into the design of a vehicle is to determine the things or uses for which the vehicle, as constructed, is fit, not the uses which the builder might anticipate. Thus, although trucks are designed and constructed to haul things and cars are designed and built to haul passengers, it might be anticipated that, in actual use, some cars will be used to haul things and some trucks will be used to haul passengers. But such transient usage is not the test of design. For example, if the market research of (say) General Motors revealed that most buyers of small pickup trucks actually used them as inexpensive sports cars, and General Motors marketed them for that purpose, the fitness of the design and construction of the truck for hauling things would not thereby be impaired. The characteristics of a "design" which define a kind of vehicle do not repose in some corporate intention, nor does the use of the term in the National policy. It uses the term "designed" in contradistinction to "use" as meaning the capacity for that for which constructed. Thus, the truck "type" referred to in the definition of "utility automobile" includes a capacity for hauling things under 1,500 pounds. (Cf. the distinctions between design and use in the definitions of "motor truck" in Veh. Code, § 410 and "passenger vehicle" in Veh. Code, § 465.)

The trial court was misled, we think, by some errant language in *Frederick*. In *Frederick, supra,* 244 Cal.App.2d 776, as here, the accident involved a vehicle which was indisputably a small pickup truck and the policy, by comparison with the National policy, employed an identical limitation on the coverage of nonowned vehicles, an identical definition of "utility automobile" and a similar definition of "private passenger automobile." We are not told whether the terms were disjunctively used in the fashion assayed in part II of this opinion for the court made no such inquiry. The court did uphold the trial court's determination that the vehicle was a "utility automobile," concluded that it was not within the coverage of the policy, and thereby necessarily determined, as we do here, that a "utility automobile" is not within the definition of "private passenger automobile." The holding in *Frederick* is thus consistent with our holding.

However, in reaching this decision a majority of the court did say, relying upon *Poncino* v. *Sierra Nevada Life & Casualty Co.* (1930) 104 Cal.App. 671 [286 P. 729], that " 'the manner in which a vehicle is used, as well as its construction, is an important factor in determining its character' " and that "[i]n this age of rubber wheels, in which autos of all descriptions . . . are used by the mass of the population, it is probable that many so-called trucks . . . are exploited solely for personal transportation . . . ." *(Id.,* at pp. 784 and 785.) The court used this observation as further support for the finding of the trial court,[9], that the vehicle in issue was "what it looked like, and what it was licensed for, to wit: a pickup truck and not a 'private passenger automobile.' " *(Id.,* at p. 785.) The suggestion in the majority opinion that transient vehicle uses might provide a criterion of 'private passenger automobile" provoked a concurring opinion which said that "the definitions contained in the policy . . . clearly indicate that such a [pickup truck] is not included within the policy's definition of "private passenger vehicle' regardless of its use." *(Id.,* at p. 794.) We concur in that observation.

*Frederick* failed to recognize that the criterion employed in *Poncino* was applied to determine the character of an unusual vehicle. The case involved "a Ford runabout upon the rear of which the owner had attached a short box or body similar to those used on ordinary delivery wagons." *(Id.,* at p. 673.) At issue was whether the owner had, by reconstruction, "alter[ed] its character" from an ordinary private passenger car to a truck. *(Id.,* at p. 675.) The vehicle had been bought "as a passenger car" and primarily

---

[9] The court mischaracterized the nature of its review of the trial court ruling as involving a question of fact. There were no facts in dispute. The question to be resolved was their materiality, a question of law. That presented question of the meaning of the contract of insurance, i.e., the usage of its words rather than the usage of the vehicle. It was in answer to this question that the court offered a misleading criterion of the terms of the policy.

was used for that purpose. (*Ibid.*) The question was whether the policy, which covered the vehicle in the form it emerged from the factory, continued to cover the altered vehicle. The owner's purposes (encompassing both the manner of alteration *and* its uses) became relevant to the resolution of the ambiguity thus created precisely because of the significance of the owner's actions in the creation of the definitional problem. (Cf. *Farmers Ins. Group* v. *Koberg, supra,* 129 Cal.App.3d 1033.) The vehicle was bought as a passenger vehicle and, despite the modifications, continued to be so used. The court was thus presented with the abnormal case, a hybrid vehicle created in an amorphous context, giving rise to an ambiguity in the application of the policy language. (Cf. fn. 8, *ante.*) In that context, *Poncino* resolved the ambiguity in favor of coverage, applying among others a criterion of the owner's usage. That unique circumstance distinguishes *Poncino* both from *Frederick* and this case.

The trial court's mistaken reliance upon *Frederick* led it to the erroneous conclusion that coverage was provided because the Sullivan truck was a private passenger automobile within the meaning of the policy. That flawed conclusion must fall and with it the judgment.

The judgment is reversed.

Sparks, J., and Sims, J., concurred.